588 P.2d 945

**William John ROGERS, SSA 519 66 6853, Claimant-Appellant,**

v.

**The TRIM HOUSE, Employer,**

and

**Department of Employment, Defendants-Respondents.**

No. 12798.

Supreme Court of Idaho.

Jan. 3, 1979.

Louis Garbrecht, III, Idaho Legal Aid Services, Twin Falls, for claimant-appellant.

Wayne L. Kidwell, Atty. Gen., R. LaVar Marsh, Deputy Atty. Gen., Donald L. Harris, Asst. Atty. Gen., Boise, for defendants-respondents.

DONALDSON, Justice.

This is an appeal from an Order of the Idaho Industrial Commission denying unemployment compensation benefits to the claimant-appellant.

Claimant, William Rogers, began working for The Trim House in September of 1974 as an automobile upholsterer. This employment was covered employment under the Employment Security Law. As part of his employment, the claimant would prepare oral bids, which were offers to customers to do upholstery work for a specified amount of money. In December of 1974 he started a three year apprenticeship program through the Bureau of Apprenticeship and Training, at the end of which time he would be eligible for a journeyman upholsterer's license.

On or about December 10, 1976, the claimant quit his employment with The Trim House because he felt his wages of $3.45 per hour, plus an offered raise of approximately $90 per month, were not enough. At the time of this separation, he did not apply for unemployment benefits. Within a few days, the claimant returned to The Trim House to do upholstery work on a commission basis. Upon completion of this work, he asked for his job back and returned to work as a regular employee on December 24, 1976. Mr. Gepner, his employer, paid him $3.45 per hour when he returned to work.

Shortly after returning to work, the claimant made a bid on a car which belonged to a friend. In his employer's opinion this bid was too low for the amount of work done. On January 10, 1977 Mr. Gepner called the claimant to his office to discuss this bid. After a heated discussion in which the claimant believed his honesty was being questioned, the claimant quit his employment for the second time. The claimant then filed for unemployment benefits on February 15, 1977 based on his January 10 separation only.

A claims examiner at the Department of Employment determined that the claimant was ineligible for unemployment benefits. The claimant then appealed to an appeals examiner, who affirmed the denial of benefits by the claims examiner.

In his decision the appeals examiner noted that "it was established at the hearing that the claimant quit his employment on or about December 10, 1976, was rehired on December 24, 1976, and quit again on January 10, 1977." As a result the appeals examiner specifically concluded that "since the claimant did not have earnings amounting to eight times his weekly benefit amount after December 10, 1976, it is necessary that a ruling be made on both separations" even though prior to the hearing Rogers received no notice that the appeals examiner might hear new evidence and might determine his eligibility based on the December 10 separation. The appeals examiner then determined that in addition to

the claimant's January 10, 1977 voluntary separation being without good cause, his December 10, 1976 voluntary separation was also without good cause. The appeals examiner modified the February 28, 1977 determination of the claims examiner to include his determination of the December 10 separation.

The Industrial Commission affirmed the decision of the appeals examiner in its order dated October 13, 1977. The claimant now appeals to the Idaho Supreme Court pursuant to I.A.R. 11(d).

Essentially Rogers raises three assignments of error on appeal. The first suggests possible procedural and legal errors in the appeals examiner's decision regarding the December 10 separation, an issue which Rogers contends was not properly before the appeals examiner and should not have been considered or ruled upon. The second assignment of error addresses the Industrial Commission's refusal to admit evidence of the apprenticeship program, in which Rogers was taking part, during his employment with The Trim House. The third alleged error challenges the Industrial Commission's affirmance of the appeals examiner's conclusion that Rogers did not quit for "good cause."

In *White v. Idaho Forest Industries*, 98 Idaho 784, 572 P.2d 887 (1977) we held that the due process requirements of this state's constitution, Idaho Const., art. 1, § 13, precludes an administrative tribunal from raising issues without first giving the affected party fair notice and providing him with a full opportunity to meet the issue. The record before us here indicates that prior to the hearing before the appeals examiner, the Department of Employment did not give any notice to Rogers that it would consider the issue of his December 10 separation. This issue was not properly before the appeals examiner. It was therefore error for him to make any finding or determination with respect to the December 10 separation and to modify the determination issued February 28, 1977 to include that separation.

The question remains, however, as to whether the appeals examiner's determination with respect to the December 10 separation was prejudicial error necessitating reversal of the Industrial Commission's order denying Rogers unemployment benefits or whether it was harmless error. Here, appellant Rogers has the burden of showing prejudicial error. *Obray v. Mitchell*, 98 Idaho 533, 567 P.2d 1284 (1977); *Annau v. Schutte*, 96 Idaho 704, 535 P.2d 1095 (1975). In his reply brief Rogers argues that because both the appeals examiner and the Commission upheld the determination of claimant's ineligibility based upon the December 10 separation, he has met his burden of showing prejudicial error. We disagree.

A reading of the appeals examiner's decision indicates that his determinations—that both the December 10 and January 10 separations were without "good cause"—were entirely separate from one another. The appeals examiner found that "[o]n or about December 10, 1976, the claimant quit his employment because he was not satisfied with his pay scale, and the employer would not meet the pay the claimant wanted." From this he concluded that:

> The claimant left his employment on or about December 10, 1976, because he was dissatisfied with the wages he was receiving. He was working under an apprenticeship program and no evidence has been presented to show that he was not being paid as agreed under this program. Under these conditions the claimant has not established he had no reasonable alternative but to quit his employment.

Based on the above finding of fact and conclusion, the appeals examiner determined that the December 10 separation "was due to a voluntary quit without good cause" and that Rogers "was ineligible on *this* separation effective February 13, 1977.-" (emphasis added)

Independent of the December 10 separation, the appeals examiner made findings and conclusions to the following effect.

> The claimant's separation on January 10, 1977 occurred due to a bid on an upholstery job and paint job on a car belonging to a personal friend of the claimant. . . .
>
> The employer was satisfied with the claimant's work in general. However, according to the employer the claimant did resist constructive criticism which was necessary about his work at times.
>
> It is apparent that the job completed for the claimant's friend after he returned to work on December 24, 1976, was the main cause for the second separation. . . . .
>
> . . . the claimant did owe it to his employer to try to work out an agreeable solution to (sic) low bid if at all possible and has not established to the satisfaction of this examiner that he had no reasonable alternative but to quit his employment.
>
> . . . claimant voluntarily quit his employment on January 10, 1977, without good cause. He is ineligible on *this* separation effective February 13, 1977. (emphasis added)

Given the independent nature of the appeals examiner's findings and conclusions in connection with the December 10 and January 10 separations, we hold that it was harmless error for him to have considered the December 10 separation. Harmless error is not grounds for reversal. *Obray v. Mitchell, supra.* We therefore decline to reverse the Industrial Commission's order affirming the appeals examiner's denial of unemployment benefits to Rogers on this ground.

Rogers next contends that the Commission violated the Provisions of I.C. § 72–1368(g) in sustaining an objection at the Commission hearing to Rogers' testimony with respect to the apprenticeship program, with which he was involved during his employment with The Trim House, on the ground that it was already in the record. I.C. § 72–1368(g) states in pertinent part:

> . . . The record of the proceedings before the appeals examiner shall become part of the record of the proceedings on a claim for review before the board with respect to the evidence admitted into tes-

timony received before the appeals examiner, but the board is not precluded from hearing the same witnesses as appeared before the appeals examiner nor any additional witnesses *nor is the board precluded in any way from receiving any additional evidence.* . . . (emphasis added)

Rogers argues that the phrase "nor is the board precluded in anyway from receiving any additional evidence" requires the Commission to consider additional evidence not contained in the record before the appeals examiner.

In the first instance, our reading of I.C. § 72–1368(g) indicates that the Industrial Commission has the discretion to receive new evidence during a proceeding before it. Idaho Code § 72–1368(g) does not mandate the reception of new evidence. This we acknowledged in *White v. Idaho Forest Industries, supra* 98 Idaho at 785, footnote 1, 572 P.2d at 888:

> Unlike most appeal situations where new evidence would not be allowed, I.C. § 72–1368, states only that the Commission "is not precluded in any way from receiving any additional evidence." This section is not a carte blanche allowing . . . [a party] the unbridled right to present a substantially new case, absent some showing as to why the evidence had been unavailable earlier.

From the record we discern no effort on Rogers' part to present either his theory of a defective apprenticeship program as "good cause" for his January 10 separation or any substantive evidence in support of that theory to the appeals examiner. Nor does the record contain any explanation as to why evidence in support of Rogers' apprenticeship theory was unavailable and not presented earlier. Rogers asserts that the reason for the lack of apprenticeship program evidence is that the appeals examiner refused to admit that evidence. This misstates the record.

At the hearing before the appeals examiner, the appeals examiner questioned Rogers about his signing a statement indicating that he was to take orders from the general manager.

Examiner: . . . when you are working under an apprenticeship program, you have to be under instructions by someone, do you not?

Rogers: Yes, I suppose you do, but even the apprenticeship program was kind of a hoax in itself too because it was . . .

Examiner: We'll not go into that. I'm just asking you under an apprenticeship program, that you have to be under instruction in order to be in an apprenticeship, is that correct?

Rogers: As far as I know.

Examiner: . . . Okay. That's what I wanted to know. Now, if you have some comments to make about it, and did you ever bring it to Mr. Williams' attention, that it was a hoax?

Rogers: No, because if I, I felt that if I would have made any mention to it, I would have endangered my job.

Examiner: All right, well, you understand that you have a responsibility and if you think that its not working properly to let Mr. Williams know, do you not?

Rogers: No, I did not know that.

The above testimony makes it clear that the appeals examiner did not exclude evidence in regard to the shortcomings of the apprenticeship program. He merely narrowed Rogers' responses in order to make them responsive to his questions. Further, the appeals examiner indicated that if Rogers wanted to comment on the apprenticeship program, he could do so. We can find no indication in the transcript of the hearing before the appeals examiner that either Rogers or his attorney ever seized upon the opportunity to present evidence of the apprenticeship program being the cause of Rogers' separation.

We note further that, at the hearing before the Industrial Commission, the acting chairman of the Commission, in sustaining the objection to the further testimony about the apprenticeship program because of its repetitive nature, specifically stated:

> . . . and if you have some corrections that you want to make in this [apprenticeship program testimony], I think

it should be noted to the page and line you are making the corrections and not repeat the whole testimony.

No such corrections were ever made.

Rogers had every opportunity to present evidence of the shortcomings of the apprenticeship program as "good cause" for leaving his employment to the appeals examiner. He did not do so. Nor did he ever make corrections, as the Industrial Commission stated he could do, as to the testimony relevant to the apprenticeship program presented to the appeals examiner. It would be inappropriate for this Court now to allow appellant to do what he could and should have done at the two administrative hearings below. Such action on our part would effectively allow him to present a substantially new case. This we decline to do since appellant has made no showing as to why this evidence was unavailable earlier. *White v. Idaho Forest Industries, supra.* Appellant's argument that the Industrial Commission should have considered new testimony about the apprenticeship program is without merit.

■ Lastly Rogers asserts that both the appeals examiner and the Industrial Commission erred in finding that he did not leave his employment on January 10, 1977 for "good cause" so as to be entitled to unemployment benefits. Without question, in an unemployment insurance case, the burden is upon the claimant to show that he left his employment for "good cause." *Flynn v. Amfac Foods,* 97 Idaho 768, 554 P.2d 946 (1976); *Clark v. Bogus Basin Recreational Association,* 91 Idaho 916, 435 P.2d 256 (1967). Further, this Court will sustain the Commission's findings of fact if supported by substantial and competent evidence. *Avery v. B & B Rental Toilets,* 97 Idaho 611, 549 P.2d 270 (1976). We have reviewed the record before us and the findings of fact of the appeals examiner as affirmed by the Industrial Commission with respect to the January 10 separation. That record clearly indicates that after Rogers returned to work as a regular employee on December 24, 1976, he made a low bid for work on a friend's car. On January 10, 1977 Rogers' employer called him into his office to discuss this bid. The record shows that at that point Rogers and his employer had a heated discussion in which Rogers believed that his honesty was being questioned. Rogers then quit. The record is entirely devoid of any indication that Rogers made any effort to explore other alternatives rather than quitting.

■ We agree with the Commission that terminating employment because the employee believed that his honesty was in question does not constitute such a circumstance that compels him to leave his employment. Rogers had viable options available to him to remedy the tension between himself and his employer other than to resign. In the absence of a compelling circumstance Rogers left his employment without "good cause." His unemployment was voluntary rather than involuntary.

■ There is substantial and competent evidence in the record to support both the appeals examiner's and Commission's findings with respect to the January 10, 1977 separation. We affirm the order of the Industrial Commission to the extent it affirms the decision of the appeals examiner's ruling Rogers ineligible for benefits based on the January 10 separation. Costs to respondents.[1]

SHEPARD, C. J., McFADDEN, and BISTLINE, JJ., and DUNLAP, J. Pro Tem, concur.

---

1. Because of our disposition of this case we need not reach the issue of whether claimant is entitled to attorney fees.