719 P.2d 1202

**Paula A. BORTZ, Claimant-Appellant,**

v.

**PAYLESS DRUG STORE, Employer-Respondent,**

**and**

**State of Idaho, Department of Employment, Respondent.**

**No. 16011.**

Supreme Court of Idaho.

May 21, 1986.

L. Scott Gould, Moscow, Idaho, for appellant.

Jim Jones, Idaho Atty. Gen., Carol Lynn Brassey and Larry F. Weeks, Deputies Atty. Gen., Boise, Idaho, for respondent Dept. of Employment. Larry F. Weeks argued.

BISTLINE, Justice.

Claimant-appellant Paula Bortz appeals from an order of the Industrial Commission (the Commission), which concluded that she had voluntarily quit her employment without good cause and was ineligible for unemployment compensation benefits. Bortz had filed with the State Department of Employment (the Department) for unemployment benefits pursuant to I.C. § 72–1301 *et seq.* The claims examiner initially found that because Payless had discharged Bortz without proof of misconduct, Bortz was eligible for benefits. The Department later reaffirmed this. Then, at an appeal at which Bortz was not represented, the Department's appeals examiner reversed the prior decisions, finding that Bortz had voluntarily quit without good cause, and had intentionally disregarded her employer's interests, and consequently was ineligible. Bortz appealed this decision to the Industrial Commission.

At the hearing before the Commission's referee, respondent Department of Employment did not appear,[1] and Payless appeared only in the person of an employee, not in the person of counsel. The Commission affirmed the decision of the appeals examiner. This appeal followed. Defending the appeal is the Department. No brief has been filed by Payless, nor did it appear to argue orally.

Bortz argues primarily that she had good cause to quit due to abusive treatment at the hands of her employer. Holding that the record and the law support Bortz, we set aside the decision of the Commission and remand with directions.

The underlying facts in this case were developed at administrative hearings conducted by the Department, and finally by the Industrial Commission. The Commission found:

I.

The Claimant was employed by Payless Drug Store at its Lewiston store beginning in July of 1982. Her duties included working as a cashier and stocking shelves.

II.

Payless employees who wish to make purchases at the store must follow proce-

---

1. As has been explained to us at oral argument in earlier cases, the legal staff of the Department abstains from taking any part in the processing of claims for benefits while in the wholly administrative stages. When a claim has gone through the administrative stages and an appeal is taken to the Industrial Commission, at that point the legal staff becomes actively involved, and may side with the employer or with the employee, notwithstanding which way the final administrative decision went.

Here, when Bortz appealed to the Commission, four attorneys of the Department's legal staff filed a written notice of appearance with the Commission. The notice did not state whether the Department was siding with Bortz or with Payless. Both Bortz and Payless were given proper notice that the Commission was going to take additional testimony prior to reaching its decision, but neither appeared. Because it was not raised as an issue on the appeal to this Court, we need not decide whether the Department is precluded from appealing a decision of the Commission which it let go by default in not appearing.

dures established by Payless. When making a purchase, an employee first enters the purchase in her employee purchase book. The employee must then obtain approval from a supervisor. After obtaining approval, the employee pays for the merchandise. A copy of the receipt is then attached to the employee purchase book.

### III.

On July 15, 1984, the Claimant was late in reporting for work. She was pregnant at that time. She had worn high-heeled shoes to work, but when she arrived she realized that she would not be able to work her entire shift in those shoes [because she would be working with items on low shelves]. She went to an area of the store where shoes were displayed and took a pair of "jelly" shoes off a shelf and put them on. *A supervisor observed her take the shoes. After she put her high-heeled shoes in her locker, the Claimant entered the "jelly" shoes in her employee purchase book.*

### IV.

After entering the "jelly" shoes in her employee purchase book, the Claimant did not obtain a supervisor's approval for the purchase. She was not sure why she did not immediately seek a supervisor's approval; she believed that she may have set out to find a supervisor after entering the shoes in her purchase book and that she may have been distracted by a customer request or some other task. In any event, *she forgot about the shoes and she did not obtain a supervisor's approval or pay for the shoes on July 15 or 16.*

### V.

On July 17, the Claimant reported for work at 1:00 p.m. At that time, *she was taken to an office to meet with Payless' regional security officer, Steven Hamre.* Hamre first said that he wanted to discuss Payless policies. He reviewed Payless employee purchase policies and asked the Claimant if she understood them. She replied that she did. He then gave the Claimant Miranda warnings and asked her about the shoes that she had taken on July 15. The Claimant explained that she had worn high-heeled shoes that day but had realized that she would not be able to work her entire shift in those shoes, so she took the "jelly" shoes; she also explained that she had forgotten to pay for the shoes.

### VI.

During the meeting on July 17, *Hamre said that he had heard that the Claimant had taken a green bandanna without paying for it. The Claimant denied that allegation. He also said that the Claimant was a suspect in some till shortages. He made a statement implying that a person in the Claimant's condition, i.e., pregnant, would steal. He also told the Claimant that with regard to the till shortages "the finger is pointing at you."* The Claimant became upset and said that she did not have to listen to Hamre's allegations. He said that she was free to leave at any time. The Claimant then left. She went and got her time card and returned to the office and told the assistant manager that she quit. She quit because Hamre's questions and allegations upset her.

### VII.

*At the time that she quit, the Claimant had sensed from the tenor of the conversation that she was to be discharged. Payless had decided prior to the meeting with the Claimant on July 17 that she would be discharged,* but she told the assistant manager that she quit before she was notified of her discharge.

### VIII.

At the request of the assistant manager, the Claimant returned the "jelly" shoes to the store later on the afternoon

of July 17. The retail price of the shoes was about $4.99; *the cost of the shoes to Payless was about $2 to $3.*

### IX.

The Claimant was a "suspect" in the till shortages because of the pattern of shortages at her cash register indicated that there was a possibility that she might be stealing. However, *there was no evidence that the Claimant ever stole any money or any merchandise from Payless.*

### X.

The Claimant filed a claim for unemployment benefits on July 20, 1984.

R., pp. 32–35 (emphasis added).

With those facts before it, the Industrial Commission reached this conclusion:

### CONCLUSION OF LAW III

In the case at hand, the Claimant quit her employment because the questions and allegations of the security officer upset her. But these are not circumstances that would compel a reasonable person to leave her employment. Cf. *Rogers v. The Trim House,* 99 Idaho 746, 588 P.2d 945 (1979). Therefore, the Claimant's unemployment is due to the fact that she voluntarily left her employment without good cause, so she is not eligible for unemployment benefits.

■ At oral argument, counsel for the Department agreed that we are not bound by the conclusions of law which are drawn by the Commission. I.C. § 72–732(4) provides that this Court may set aside the order where "[t]he findings of fact do not as a matter of law support the order or award." In other words, this Court must set aside the order of the Commission where it failed to make "a proper application of law to the evidence." *Wachtler v. Calnon,* 90 Idaho 468, 472, 413 P.2d 449, 451 (1966). *See also Sines v. Sines,* 110 Idaho 776, 718 P.2d 1214 (Sup.Ct.1986). Here, the Commission's conclusion of law that Bortz left her employment "without

good cause" is unsupported by its findings of fact.

■ The Commission's own findings lead unerringly to the conclusion that Bortz had good cause. In defining "good cause" for the purposes of I.C. 72–1366(e), this Court has stated:

> "In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman, and not to the supersensitive...."
>
> *Burroughs v. Employment Security Agency,* 86 Idaho 412, 414, 387 P.2d 473, 474 (1963) *quoting* 81 C.J.S. Social Security and Public Welfare § 167, pp. 253–54.

Bortz was interrogated in a heavy-handed and offensive manner. The inquisition intimated her guilt on unfounded charges of theft to the point where she correctly surmised she was about to be fired. In our view, contrary to the Commission's conclusion, she acted reasonably in quitting such employment. *See Saulls v. Employment Security Agency,* 85 Idaho 212, 220, 377 P.2d 789, 794 (1963) (provocation from unjust reprimands may constitute good cause for leaving employment).

As noted from the Commission's conclusion set out above, it relied on *Rogers v. Trim House,* 99 Idaho 746, 588 P.2d 945 (1979). However, *Rogers* clearly is distinguishable from the instant case. Claimant Rogers quit his employment after a heated discussion with his employer during which he believed his honesty had been questioned. *Id.* at 751, 588 P.2d at 950. Rogers was not subjected to the same type and intensity of intimidation and interrogation as Bortz. More importantly, there is no indication that Rogers was pressed to the point where he sensed that his discharge was imminent; to the contrary, Rogers ap-

parently had "viable options" to quitting. *Id.* Here, Bortz had no alternative to leaving work, since, as specifically found by the Commission, Payless already had decided to fire her. Her termination was inevitable, whether or not she was willing to subject herself to further verbal harassment at the hands of Payless.

*Ellis v. Northwest Fruit & Produce,* 103 Idaho 821, 654 P.2d 914 (1982), cited by the Department, is similarly inapposite. *Ellis* held that "[w]hen an employee has *viable* options available to him, his voluntary termination without exploring those options does not constitute good cause for obtaining unemployment compensation." *Id.* at 823, 654 P.2d at 916 (emphasis added). Ellis never discussed with his employer his reasons for quitting, despite the possibility that some accommodation might have been reached. *Id.* By the Commission's own findings, Bortz had no such *viable* options; Payless had decided to fire her and she sensed it. Having no viable options, the only question was whether her quitting was reasonable. And we have held that it was.

The order of the Commission is set aside and the cause remanded for the entry of a proper conclusion based on the facts previously found, and consonant herewith.

Costs to appellant, including attorney's fees under the Department of Employment's regulations in effect at the time her claim for benefits was filed.

DONALDSON, C.J., SHEPARD and HUNTLEY, JJ., and TOWLES, J. (pro tem), concur.