787 P.2d 263

James A. SPRUELL, SSA 566 60 7493, Claimant–Appellant,

v.

ALLIED MEADOWS CORPORATION, dba Mountaintop Quick Lube, Employer–Respondent,

and

State of Idaho, Department of Employment, Respondent.

No. 17541.

Supreme Court of Idaho.

Feb. 15, 1990.

278

William H. Foster, Grangeville, for appellant.

Jim Jones, Atty. Gen., John C. Hummell (argued), Deputy Atty. Gen., Boise, for respondent Dept. of Employment.

James W. Given, Lewiston, for respondent Allied Meadows.

BOYLE, Justice.

This is an appeal from a decision of the Industrial Commission. The Idaho Department of Employment determined that appellant James Spruell was eligible for unemployment compensation benefits. The Industrial Commission heard the matter de novo and issued its own findings and conclusions denying benefits. We affirm the decision of the Industrial Commission.

Spruell was employed by Allied Meadows Corporation to manage a combination convenience store and self-service gas station owned by Allied. Spruell was discharged from that employment and filed for unemployment compensation benefits. Allied alleged in opposing the claim for benefits that Spruell was discharged for cause because he disobeyed direct orders to maintain sufficient fuel levels in the service station storage tanks and had failed to keep signed business checks in a secure place in violation of the employer's instructions.

The Department of Employment hearing officer determined that Spruell's behavior did not constitute employment-related misconduct and awarded unemployment compensation benefits. The Industrial Commission, after de novo review, concluded that Allied prevailed by the weight of the evidence, and found that Spruell's behavior and conduct constituted sufficient employment-related misconduct to justify his discharge, and therefore he was not entitled to unemployment compensation benefits.

■■■ This Court's review of unemployment compensation cases is limited by the Idaho Constitution and prior decisions of this Court to reviewing only questions of law. Idaho Constitution, art. 5 § 9; *Puckett v. Idaho Dept. of Corrections*, 107 Idaho 1022, 695 P.2d 407 (1985); *Parker v. St. Maries Plywood*, 101 Idaho 415, 614 P.2d 955 (1980); *Harris v. Green Tree, Inc.*, 100 Idaho 227, 596 P.2d 99 (1979); *Simmons v. Dept. of Employment*, 99 Idaho 290, 581 P.2d 336 (1978); *Booth v. City of Burley*, 99 Idaho 229, 580 P.2d 75 (1978); *Hutchinson v. J.R. Simplot Co.*, 98 Idaho 346, 563 P.2d 404 (1977). Further, our review in cases involving factual disputes is restricted to determining whether findings of fact by the Industrial Commission are supported by substantial and competent evidence in the record. *Burnside v. Gate City Steel Corp.*, 112 Idaho 1040, 739 P.2d 339 (1987); *Ullrich v. Thorpe Elec.*, 109 Idaho 820, 712 P.2d 521 (1985); *Booth v. City of Burley*, 99 Idaho 229, 580 P.2d 75 (1978). As stated in *Booth*, we declined to "independently adopt findings of fact at variance with those of the Industrial Commission where such findings are supported by substantial and competent evidence in the record. Prior decisions suggesting a contrary result are, to this extent, hereby expressly overruled." 99 Idaho at 232, 580 P.2d at 78. Where the factual findings of the Industrial Commission are sustained by substantial and competent, though conflicting evidence, they will not be reversed on appeal. *Kyle v. Beco Corp.*, 109 Idaho 267, 707 P.2d 378 (1985); *Wood v. Quali–Dent*

*Dental Clinics,* 107 Idaho 1020, 695 P.2d 405 (1985); *Cornwell v. Kootenai County Sheriff,* 106 Idaho 823, 683 P.2d 859 (1984). The Supreme Court is compelled to defer to the findings of the Industrial Commission when those findings are supported by substantial and competent evidence. Idaho Constitution, art. 5, § 9; *Guillard v. Dept. of Employment,* 100 Idaho 647, 603 P.2d 981 (1979).

The Industrial Commission's responsibility and scope of review in employment compensation claims is clearly set forth in I.C. § 72–1368(g) which provides in pertinent part:

(g) The Commission shall decide all claims for review filed by any interested party in accordance with its own rules of procedure not in conflict herewith. The *record* before the Commission *shall consist of the record of proceedings before the appeals examiner,* unless it appears to the Commission that the interests of justice require that the interested parties be permitted to present additional evidence. In that event, the *Commission may, in its sole discretion, conduct a hearing to receive additional evidence* or may refer the matter back to the appeals examiner for an additional hearing and decision. *On the basis of the record of proceedings before the appeals examiner* as well as any additional evidence, if allowed, the Commission shall affirm, reverse, modify, set aside or revise the decision of the appeals examiner or may refer the matter back to the appeals examiner for further proceedings. (Emphasis added.)

In I.C. § 72–1368(g), the legislature provided for a de novo review before the Industrial Commission based upon the record of the proceedings before the appeals examiner. In reviewing the instant case the Industrial Commission complied with the direction of the legislature by reviewing the record consisting of the proceedings before the hearing examiner and making its findings.

The Industrial Commission properly applied Idaho law in determining whether Spruell was eligible for unemployment compensation benefits. I.C. § 72–1366(e) provides that a claimant is ineligible for unemployment compensation benefits if unemployment is due to discharge for misconduct in connection with employment. The term "misconduct," as used in I.C. § 72–1366(e), has been interpreted by this Court as meaning "willful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees." *Johns v. S.H. Kress & Co.,* 78 Idaho 544, 548, 307 P.2d 217, 219 (1957); *see also Matthews v. Bucyrus–Erie Co.,* 101 Idaho 657, 619 P.2d 1110 (1980), wherein we held:

There is no requirement in the *Johns* definition of misconduct that the claimant's disregard of standards of behavior must be found to have been subjectively willful, intentional or deliberate. Rather the test for misconduct in standard-of-behavior cases is (1) whether the employee's conduct fell below the standard of behavior expected by the employer; and (2) whether the employer's expectation was objectively reasonable in the particular case. The employee's subjective state of mind is irrelevant.

101 Idaho at 659, 619 P.2d at 112.

The Industrial Commission concluded that at least two of the reasons advanced for terminating Spruell constituted employment-related misconduct which rendered him ineligible for unemployment compensation benefits. The Industrial Commission found that Spruell's leaving the business checkbook with signed blank checks unattended was in direct contravention of the directions of the employer and allowing the service station gas tanks to become empty on several occasions was behavior constituting employment-related misconduct warranting his discharge thus precluding him from receiving unemployment compensation benefits.

Although this Court may have reached a different conclusion from the conflicting evidence, the findings reached by the Industrial Commission are supported by substantial, competent evidence and must be sustained. *Burnside v. Gate City Steel*

*Corp.*, 112 Idaho 1040, 739 P.2d 339 (1987); *Ullrich v. Thorpe Elec.*, 109 Idaho 820, 712 P.2d 521 (1985); *Booth v. City of Burley*, 99 Idaho 229, 580 P.2d 75 (1978).

The decision of the Industrial Commission is affirmed. Costs to respondent.

BAKES, C.J., JOHNSON, J. and TOWLES, District Judge Pro Tem., concur.

BISTLINE, Justice, dissenting.

The majority opinion purports in one paragraph to rather facilely resolve an issue which has troubled this Court for several decades: The question of whether an employee's misconduct must be *intentional* in order to justify the denial of unemployment compensation. This Court has wrangled with this issue throughout the course of numerous opinions, many of which will be discussed in due course. To my mind the mere recitation of an isolated statement drawn from only one of this myriad of cases is an especially inadequate resolution of that issue in this particular case and the posture in which it arrives here.

## THE DEFINITION OF "MISCONDUCT"

Construction of our employment security law is guided by the declaration of state public policy contained in I.C. § 72–1302 (1973) which provides in pertinent part:

The legislature, therefore, declares that, in its considered judgment, the public good, and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, and for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

The *requirement* that persons must be unemployed *through no fault of their own* in order to be entitled to unemployment compensation benefits surfaces in a succeeding statute which states the personal eligibility conditions for unemployment compensation. I.C. § 72–1366 (Supp.1988) provides in relevant part:

The personal eligibility conditions of a benefit claimant are that—(f) His *unemployment is not due to the fact* that he left his employment voluntarily without good cause, or *that he was discharged for misconduct in connection with his employment.*

(Emphasis added.)

As stated at the outset, the definition of "misconduct" has troubled this Court for several decades. The legislature has to date left it to this Court to provide guidance as to what constitutes the "misconduct" which will suffice to preclude eligibility for benefits. Over the years two lines of cases have advanced competing definitions of "misconduct" in connection with employment. The first definitive language from the Court appeared in *Mandes v. Employment Security Agency*, 74 Idaho 23, 25, 255 P.2d 1049, 1050 (1953), quoting 48 Am. Jur. § 38, at 541–42:

Misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show *an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer....*

(Emphasis added.)

As noted, this first line of cases beginning with *Mandes* defines misconduct to include the requirement of intentional and substantial disregard of the employer's rules and interests. These cases do not categorize types of misconduct into discrete categories. They are typified by *Mandes: Johns v. S.H. Kress & Co.*, 78 Idaho 544, 307 P.2d 217 (1957); *Wroble v. Bonners Ferry Ranger Station*, 97 Idaho 900, 556 P.2d 859 (1976); *Hutchinson v. J.R. Simplot Co.*, 98 Idaho 346, 563 P.2d 404 (1977); *Simmons v. Department of Employment*, 99 Idaho 290, 581 P.2d 336

(1978); and *Beaty v. City of Idaho Falls,* 110 Idaho 891, 719 P.2d 1151 (1986).

Those cases hold that the *sina qua non* of employment-related misconduct is an intentional, wilful disregard of an employer's rules or best interests. As stated in *Johns,* "[t]he discharge of an employee for intentional, wilful misconduct deprives him of the right to unemployment compensation." 78 Idaho at 548, 307 P.2d at 219. When applying the legal definition of misconduct to the facts in *Mandes,* the majority offered the following instructive language:

> Whether or not appellant was mistaken in thinking he was being permanently placed at the hoist inside the mine, the directions as he received them, or as he understood them, as given by Cole and the shifter were somewhat conflicting and confusing. He was not recalcitrant or capricious in his refusal to return to the hoist, but apparently was justifiably concerned about his health, knowing he had an incurable condition which, though perhaps not aggravated by the smoke and dust, was at least irritated thereby. *Therefore, there is absent any element of wilfulness, essential to constitute misconduct.*

74 Idaho at 28, 255 P.2d at 1052 (emphasis added).

Another, more recent line of cases begins with *Matthews v. Bucyrus–Erie Co.,* 101 Idaho 657, 619 P.2d 1110 (1980). Other cases within this line are *Roll v. City of Middleton,* 105 Idaho 22, 665 P.2d 721 (1983); and a series of cases which appeared in 107 Idaho including *Goolsby v. Life Savers Inc.,* 107 Idaho 456, 690 P.2d 911 (1984); *Puckett v. Idaho Dept. of Corrections,* 107 Idaho 1022, 695 P.2d 407 (1985); and *Davis v. Howard O. Miller Co.,* 107 Idaho 1092, 695 P.2d 1231 (1985).

These cases, beginning with *Matthews,* derive their statement of the definition of misconduct from *Johns v. S.H. Kress & Co.,* 78 Idaho 544, 307 P.2d 217 (1957), which in turn relied upon a selected portion of the definition contained in *Mandes.* The *Johns* language defining misconduct is as follows:

> While the term 'discharged for misconduct' as used in § 72–1366(f), I.C. has been variously defined, we think the term should be interpreted as meaning wilful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees.

78 Idaho at 548, 307 P.2d at 219.

The *Matthews* majority seized upon this statement of the *Johns* definition of misconduct (ignoring the statement in headnote 4 of *Johns* that the discharge of an employee for intentional wilful misconduct deprives him of the right to unemployment compensation) and created distinct categories—apparently based upon the *Johns* grammatical separation of certain phrases of the *Mandes* definition of misconduct by semicolons—manufacturing a separate category of misconduct which requires no intentional conduct. The *Matthews* Court indulged in the following judicial legislation:

> While the term 'discharged for misconduct' as used in § 72–1366(f), I.C. [now I.C. § 72–1366(e) ] has been variously defined, we think the term should be interpreted as meaning wilful, intentional disregard of the employer's interests; a deliberate violation of the employer's rules; *or a disregard of standards of behavior which the employer has the right to expect of his employees.* 78 Idaho at 548, 307 P.2d at 219 (emphasis added).

This definition was recently reaffirmed as the law in Idaho in *Jenkins v. Agri-Lines Corp.,* 100 Idaho 549, 602 P.2d 47 (1979). [footnote omitted] There is no requirement in the *Johns* definition of misconduct that the claimant's disregard of standards of behavior must be found to have been subjectively wilful, intentional or deliberate. *Rather, the test for misconduct in standard of behavior cases is (1) whether the employee's conduct fell below the standard of behavior expected by the employer; and (2) whether the employer's expectation was objectively reasonable in the particular case. The employee's subjective state of mind is irrelevant.*

*Matthews v. Bucyrus–Erie Co.*, 101 Idaho at 659, 619 P.2d at 1112 (emphasis added).

Thus, the *Matthews* Court, apparently to achieve the particular result it desired in that case, carved out a separate category of misconduct cases in which intentional conduct by the employee is not required. This unprecedented and unfortunate act by the *Matthews* majority has wrought mischief ever since its inopportune materialization out of whole cloth.

The travesty wrought by the *Matthews* majority received definitive criticism in a ringing dissent to that opinion authored by Justice Joseph McFadden. Because Justice McFadden's dissent succinctly and accurately details how, where, and why the *Matthews* majority went wrong, for facility of continuity, it is repeated:

In *Johns v. S.H. Kress Co.*, 78 Idaho 544, 548, 307 P.2d 217, 219 (1957), this court stated that 'misconduct' such as to lead to the denial of unemployment compensation benefits under I.C. § 72–1366(e) could take three forms. The majority cites *Johns* and lists the *three* forms: disregard of the employer's interest, violation of its rules, or disregard of standards of behavior which the employer has a right to expect from its employees. For the first time in the 23 year history of the *Johns* standard, attention is now called to the fact that when the promulgating court listed the three forms of misconduct it appended words indicating a requirement of intent to the first two but not to the third. In so doing, the majority takes the unprecedented position that unemployment compensation benefits may be denied to a claimant who has acted unintentionally. Because I believe this new stance is not supported by the employment security law itself, by the pertinent Idaho cases, or by common sense, I respectfully dissent.

Chapter 13 of Title 72 of the Idaho Code comprises the 'Employment Security Law,' I.C. § 72–1301, which, among other things, defines eligibility for unemployment compensation benefits. Section 72–1302 acknowledges the hardships which unemployment imposes on individuals, and states that the act's purpose is to relieve some of these hardships for individuals who 'become unemployed *through no fault of their own.*' (Emphasis added.) The drafters of the act thus specifically included fault as a crucial element in determining the reach of its benefits.

My search has yet to reveal a single Idaho case where unemployment benefits were denied an individual whose misconduct was other than intentional. [Footnote omitted.] In at least one case, in fact, the court held benefits awardable because the misconduct was only inadvertent. *Wroble v. Bonners Ferry Ranger Station*, 97 Idaho 900 556 P.2d 859 (1976). Indeed, *Johns* itself involved an intentional act, so that its language referring to a different state of mind is dicta. In the sentence which immediately follows the language quoted by the majority the *Johns* court summarized its position and stated its holding: '[t]he discharge of an employee for *intentional, wilful* misconduct deprives him of the right to unemployment compensation.' 78 Idaho at 548, 307 P.2d at 219 (emphasis added).

The language of *Johns* was not original. It first appeared in Idaho in a case decided some four years earlier, *Mandes v. Employment Sec. Agency*, 74 Idaho 23, 255 P.2d 1049 (1953). In *Mandes* the language was given proper attribution, the court noting its origin in 48 Am.Jur. § 38, pp. 541–2. A look at the full text of the Am.Jur. section indicates that its authors, at least, had no doubt about the requirement of intentional conduct. They wrote that to deny benefits there

'must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employ-

ee's duties and obligations to the employer.

. . . .

Neither is mere inefficiency, unsatisfactory conduct, errors in judgment, or the like to be deemed misconduct [citation omitted].'

The authors of the source relied on by the *Johns* court were careful to address the problem of employee negligence which led to discharge, and to note that it could be considered 'misconduct' so as to deny benefits only when it functionally amounted to intentional conduct. It specifically ruled out considering errors in judgment to be 'misconduct.' The updated Am.Jur.2d position is similar, although more explicit:

'Work-connected negligence or inefficiency constitutes misconduct within the meaning of an unemployment compensation statute precluding a discharged employee from unemployment compensation benefits when the negligence or inefficiency is of such degree or recurrence as to manifest culpability, wrongful intent, evil design, or an intentional or substantial disregard of an employer's interests or of an employee's duties and obligations. Conversely, mere inefficiency, unsatisfactory conduct, *failure of good performance as the result of inability or incapacity,* inadvertencies, isolated instances of ordinary negligence, or good-faith errors in judgment or discretion, are not considered misconduct for this purpose.' 76 Am.Jur.2d Unemployment Compensation § 54, p. 948 (emphasis added, citations omitted).

*See* CCH Unemployment Insurance Rptr., Vol. 1B, ¶ 1970.

In addition, neither of the decisions of this court which held a claimant ineligible for benefits as a result of a violation of standards of conduct which the employer had a right to expect involved unintentional conduct. *Rasmussen v. Gem State Packing Co.,* 83 Idaho 198, 360 P.2d 90 (1961) (placing metal chain in scrap barrel bound for processing equipment not suited to handle metal); *O'Neal v. Employment Sec. Agency,* 89 Idaho 313, 404 P.2d 600 (1965) (postman discharged after being convicted of lewd and lascivious conduct with minor). In fact, the court has even held that the three categories of *Johns* are not discrete, and that violation of any one of them does not automatically lead to a denial of benefits. *Wroble v. Bonners Ferry Ranger Station,* 97 Idaho 900, 556 P.2d 859 (1976); *Hutchinson v. J.R. Simplot Co.,* 98 Idaho 346, 563 P.2d 404 (1977). This suggests how inappropriate is the kind of close reading indulged in by the majority.

All aside from the limits placed on our construction of I.C. § 72–1366(e) by the act itself and by prior cases, the majority's approach has unfortunate policy results. To the extent that an employee realizes that misconduct may result in termination without benefits, that misconduct is deterred. Yet there can be no deterrent value in penalizing conduct which is unintentional since the actor, by definition, cannot ponder the consequences of the action. I would also note that under the majority's construction, a denial of benefits based on a violation of the employer's rules requires intentional conduct, while the denial could be based on an *un*intentional, even good faith, breach of 'standards of behavior which the employer has a right to expect of his employees.' To require a showing of more extreme conduct for the violation of duly promulgated rules of the employer places a premium on non-promulgation, and runs counter to notions of due process.

It would not be unkind to say that there are certain aspects of Matthews' story which strain the bounds of believability, and it is clear that the majority here seeks to remedy what strikes it as an inequitable result. But the Industrial Commission explicitly decided that Matthews did not act intentionally when he decamped for Alaska, and its conclusion, is supported by substantial although obviously conflicting, evidence. I am not sufficiently interested in denying this claimant benefits that I would rewrite a

significant portion of the employment security law to accomplish the task. I would affirm the Commission's decision. *Matthews*, 101 Idaho at 659–661, 619 P.2d at 1112–1114.

This review of Justice McFadden's dissent in *Matthews* provides a convincing refutation of the *Matthews* line of cases. Yet the majority, by simply quoting some *Matthews* language and conducting no analysis of its holding adds nothing to the reasoning on this issue except further confusion. The result is that these two lines of cases are *both* still viable. There is no doubt that this will have a debilitating effect on the people charged with administering the unemployment statutes in an objective, even-handed way. Those people have no guidance from this Court concerning which line of cases to rely on in their decision-making. One day this Court will have to face up to its fence-walking function and squarely decide where lyeth the best reason. Shall the requirement be willful and intentional misconduct, or shall it not be, in depriving an employee and his family of unemployment compensation benefits. No one questions the discharge. That is not the issue. The issue is whether, in contravention of the beneficent purposes of the act, the conduct of the employee merits the withholding of benefits.

Although the Commission concluded Spruell's conduct was a "deliberate violation of employer's rule" and "a willful, intentional disregard of Employer's interest," it did not point to any error on the part of an experienced appeals examiner in finding otherwise.

Similarly, the majority opinion does not afford any illumination on the Commission's reversal of a Department determination made with the benefit of seeing and hearing the witnesses. The majority simply states that "[a]lthough this Court may have reached a different conclusion from the conflicting evidence, the result reached by the Industrial Commission is supported by substantial, competent evidence and must be sustained." [1]

I find this cursory discussion of the evidence particularly troubling in light of the fact that the Commission's findings differed so radically from those of the appeals examiner. The appeals examiner concluded that:

The preponderance of the evidence in the record establishes that the decision to discharge the claimant from his employment had been made several weeks prior to the time of the incidents alleged by the employer to have been the reasons for discharge. The claimant was to be terminated because the employer was shutting down the business due to financial considerations. In the remaining two weeks, the gas tanks did go dry, but the claimant had ordered the fuel supplies. The checkbook had been left at the business for some five months through an agreement between the employer and the claimant. The fact that it was at the business during those last two weeks is not a willful and intentional disregard of the employer's interest by the employee. There is no evidence that the claimant removed any items belonging to the employer from the shop.

The claimant did extend credit to a customer after being told not to do so. The credit, however, was not a charging as had been done in the past. The claimant had discussed the matter with the employer and had been informed that there was no problem. The payment was made by the young man in the same day as agreed upon. The employer has not established that the claimant willfully or intentionally disregarded the employer's interest, deliberately violated the employer's rules, or disregarded the standards of behavior which the employer had the right to expect particularly since the claimant's discharge was to have occurred at or about that time because the

---

1. One of the cases cited for this proposition is *Booth v. City of Burley*, 99 Idaho 229, 580 P.2d 75 (1978). Given that the majority opinion in *Booth* said that the Commission had found *intentional* misconduct, when in fact no such finding of intent is anywhere to be found in the record (see footnote 2 to my dissent in *Booth*, 99 Idaho at 233, 580 P.2d at 79), it is suggested that *Booth* is questionable precedent, at best.

employer was shutting down the business. Since the claimant's discharge was not for employment-related misconduct, the employer's account must be held to be chargeable for experience rating purposes for any benefits paid to the claimant.

R. at 5.

Based on *exactly* the same record, but without benefit of having heard the witnesses first hand, the Commission "weigh[ed] the credibility of the witnesses," R. at 16, and came to a conclusion completely opposite to that of the appeals examiner. To my mind the existence of such contradictory findings below demands more from this Court than a mere recitation of the standard of review to be applied in these cases. The requirement that the Commission's decisions be upheld if supported by substantial, competent evidence limits the review by this Court, but it does *not* require that we turn one blind eye to the record and the other blind eye to justice. It is inherently wrong for this Court to consider itself bound by a Commission finding when the Commission does not feel itself bound, or even constrained, by the final Department decision.