936 P.2d 1321

Teresa E. TEEVAN, Claimant–Appellant,

v.

OFFICE OF THE ATTORNEY GENER-
AL, NATURAL RESOURCES DIVI-
SION, STATE OF IDAHO, Defendants–
Respondents,

and

State of Idaho, Department of
Employment, Defendant.

No. 22912.

Supreme Court of Idaho,
Boise, January 1997 Term.

April 30, 1997.

80

Teresa E. Teevan, Boise, pro se, for appellant.

Alan G. Lance, Attorney General; Leslie L. Goddard, Deputy Attorney General, Boise, for respondent.

TROUT, Chief Justice.

This is an appeal from a decision and order of the Industrial Commission (Commission) finding claimant Teresa Teevan ineligible for unemployment benefits because she voluntarily left her employment without good cause connected with her employment.

## I.

## BACKGROUND

Teevan began work as a paralegal in the Natural Resources Division of the Attorney General's Office (AG's Office or employer) on December 2, 1991, when Larry EchoHawk was Attorney General. Clive Strong was the chief of the Division and Teevan's supervisor. Teevan claims that, during EchoHawk's campaign for governor, she uncovered evidence that Strong was working to undermine EchoHawk's campaign. She brought this to the attention of EchoHawk, who found no merit in her accusations. Teevan claims that, following this event, Strong embarked on a campaign to manufacture discontent with her work among the attorneys within the Division and to create an unpleasant working environment. She attempted to resign in February of 1995, but she and Strong decided to try and work things out. She then claims that Strong continuously refused to provide her with a letter of reference and "blacklisted" her in the legal community in Boise. On April 21, 1995, Teevan resigned. At no point did she express her dissatisfaction with the working environment in the office, nor did she indicate that Strong had harassed her. After leaving her job with the AG's Office, she moved to Colorado and attempted to find work. When this proved unsuccessful, she returned to Idaho and filed for unemployment benefits.

## II.

## PROCEDURAL HISTORY

On August 9, 1995, Teevan filed for unemployment benefits, claiming that she had resigned from her job with the AG's Office due to a pattern of harassment created by Strong. On August 30, 1995, the Department of Employment (Department) made an initial determination that Teevan was not eligible for unemployment benefits because she had not exhausted all reasonable alterna-

tives prior to quitting and because she had not established that she resigned for good cause connected with her employment.

Teevan protested this determination, and on September 27, 1995, a Department appeals examiner conducted a telephone hearing in which both Teevan and the AG's Office participated. On October 2, 1995, the appeals examiner ruled that Teevan was ineligible for benefits, finding that she voluntarily left her employment without good cause in connection with her employment.

Teevan appealed this decision to the Commission and requested an "expedited hearing." The Commission viewed her request as a motion for a supplemental hearing, which it denied. On March 12, 1996, the Commission issued a Decision and Order adopting the appeals examiner's findings of fact and ruling that Teevan is ineligible for benefits because she made no attempt to address her problems through the employer's dispute resolution process and because she had not met her burden of establishing that she left her employment for good cause. The Commission concluded that she voluntarily quit for personal reasons.

On appeal, Teevan raised a number of issues and requested a variety of remedies not properly before the Industrial Commission or this Court on appeal. Accordingly, we will only address those issues properly before us, namely: (1) whether the Commission abused its discretion in denying Teevan's request for a supplemental hearing, (2) whether substantial and competent evidence in the record supports the Commission's decision finding Teevan ineligible for unemployment benefits, and (3) whether the AG's Office is entitled to attorney's fees under I.A.R. 41 and 11.1.

### III.

### REQUEST FOR SUPPLEMENTAL HEARING

█ Idaho Code § 72–1368(g) provides in part:

The record before the commission shall consist of the record of proceedings before the appeals examiner, unless it appears to the commission that the interests of justice require that the interested parties be permitted to present additional evidence. In that event, the commission may, *in its sole discretion,* conduct a hearing to receive additional evidence....

(emphasis added). This Court thus reviews the Commission's decisions regarding supplemental hearings under the abuse of discretion standard. *See, e.g., Harris v. Beco Corp.,* 110 Idaho 28, 713 P.2d 1387 (1986). This statute does not require the Commission to consider additional evidence. Instead, it allows the Commission to receive new evidence that was unavailable at the time of the hearing before the appeals examiner: "This section is not carte blanche allowing ... [a party] the unbridled right to present a substantially new case, absent some showing as to why the evidence had been unavailable earlier." *Rogers v. Trim House,* 99 Idaho 746, 750, 588 P.2d 945, 949 (1979) (quoting *White v. Idaho Forest Indus.,* 98 Idaho 784, 785 n. 1, 572 P.2d 887, 888 n. 1 (1977)).

█ The Commission in this case did not abuse its discretion in denying Teevan's request for a supplemental hearing. Teevan sought a supplemental hearing to introduce new evidence which she claimed to have uncovered regarding Strong's alleged efforts to undermine EchoHawk's gubernatorial campaign. She did not, however, elaborate on the nature of the newly discovered evidence, nor did she explain why it was unavailable and not presented earlier. This Court has previously upheld the Commission's denial of hearing requests on the ground that the moving party did not adequately explain why the evidence was unavailable and not presented at the hearing before the appeals examiner. *Harris,* 110 Idaho at 30, 713 P.2d at 1389; *Rogers,* 99 Idaho at 750, 588 P.2d at 949. Teevan also suggested that Strong had coerced Cheri Jacobus, an attorney within the Division, into testifying at the hearing that she was dissatisfied with Teevan's work. The Commission noted, though, that Teevan posed no questions to Jacobus at the hearing on any subject, including any alleged pressure by Strong. Teevan essentially sought a supplemental hearing to explore a theory, coerced testimony, not presented at the telephone hearing. In *Rogers,* we upheld the

Commission's denial of a hearing request in part on the ground that the claimant sought to bring a theory before the Commission that was not presented before the appeals examiner. *Rogers*, 99 Idaho at 750, 588 P.2d at 949. Finally, Teevan sought a supplemental hearing because she disagreed with the factual findings and conclusions of the appeals examiner, claiming that they were not supported by competent evidence in the record. A claimant's disagreement with the appeals examiner's decision, however, is not a proper basis for a supplemental hearing. *See Harris*, 110 Idaho at 30, 713 P.2d at 1389; *Rogers*, 99 Idaho at 750, 588 P.2d at 949. For these reasons, we hold that the Commission did not abuse its discretion in denying Teevan's request for a supplemental hearing.

## IV.

## COMMISSION'S FINDING OF INELIGIBILITY

### A. Standard of review

■ In appeals from the Industrial Commission, we are limited to reviewing questions of law. Idaho Const. art. V, § 9; *Welch v. Cowles Publ'g Co.*, 127 Idaho 361, 363, 900 P.2d 1372, 1374 (1995) (citing *Hart v. Deary High Sch.*, 126 Idaho 550, 552, 887 P.2d 1057, 1059 (1994)). We will disturb the Commission's findings of fact only where they are not supported by substantial and competent, even if conflicting, evidence. Idaho Const. art. V, § 9; *Welch*, 127 Idaho at 363, 900 P.2d at 1374 (citing *Hart*, 126 Idaho at 552, 887 P.2d at 1059); *Spruell v. Allied Meadows Corp.*, 117 Idaho 277, 278, 787 P.2d 263, 264 (1990) (citing *Kyle v. Beco Corp.*, 109 Idaho 267, 270, 707 P.2d 378, 381 (1985)). We have defined substantial and competent evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Welch*, 127 Idaho at 365, 900 P.2d at 1376 (citing *Laundry v. Franciscan Health Care Ctr.*, 125 Idaho 279, 282, 869 P.2d 1374, 1377 (1994)). The substantial and competent evidence standard is also equivalent to the "clearly erroneous" standard of I.R.C.P. 52(a). *Hart*, 126 Idaho at 552, 887 P.2d at 1059 (citing *Mulch v. Mulch*, 125 Idaho 93, 98, 867 P.2d 967, 972

(1994); *Barber v. Honorof*, 116 Idaho 767, 770, 780 P.2d 89, 92 (1989)). Although we will set aside the Commission's order if it is not supported by the record, we will not overrule the Commission's findings solely on the ground that we might have reached a different conclusion. *Welch*, 127 Idaho at 363, 900 P.2d at 1374 (citing *Spruell*, 117 Idaho at 279, 787 P.2d at 265).

■ The question of whether a claimant voluntarily quit her job for good cause in connection with employment is a question of fact, and we will uphold the Commission's determination of this issue if supported by substantial and competent evidence. *Hart*, 126 Idaho at 552, 887 P.2d at 1059 (citing *Ullrich v. Thorpe Elec.*, 109 Idaho 820, 823, 712 P.2d 521, 524 (1985)). Although the Commission labeled the bulk of its Decision and Order "CONCLUSIONS OF LAW," the Commission actually made findings of fact with regard to whether Teevan voluntarily quit her employment for good cause in connection with her employment, and we will review these findings as such. The Commission's sole conclusion of law was the determination that, because Teevan voluntarily left her job without good cause, she is ineligible for unemployment benefits.

### B. Framework

■ Idaho Code § 72–1366(e) provides that an employee is eligible for unemployment benefits so long as she voluntarily left her employment for good cause connected with her employment. Teevan, because she left work voluntarily, has the burden of establishing that good cause exists. *Hart*, 126 Idaho at 552, 887 P.2d at 1059 (citing *Pyeatt v. Idaho State Univ.*, 98 Idaho 424, 425, 565 P.2d 1381, 1382 (1977)). Good cause is determined by a reasonable person standard: whether a reasonable person would consider the circumstances that prompted the claimant to leave work to be real, substantial, and compelling. IDAPA 09.01.30.04; *Hart*, 126 Idaho at 553, 887 P.2d at 1060. To constitute good cause, an average (rather than supersensitive) person would have felt compelled by "necessitous circumstances" to quit. *Hart*, 126 Idaho at 553, 887 P.2d at 1060; *Ellis v. Northwest Fruit & Produce*, 103

Idaho 821, 823, 654 P.2d 914, 916 (1982) (quoting *Burroughs v. Employment Sec. Agency,* 86 Idaho 412, 414, 387 P.2d 473, 474 (1963)). These circumstances must be "real, not imaginary, substantial not trifling, and reasonable, not whimsical." *Ellis,* 103 Idaho at 823, 654 P.2d at 916 (quoting *Burroughs,* 86 Idaho at 414, 387 P.2d at 474). In addition, to establish that she left employment for good cause, Teevan must demonstrate that she exhausted all reasonable alternatives prior to resigning. *Hart,* 126 Idaho at 553, 887 P.2d at 1060; *Ellis,* 103 Idaho at 823, 654 P.2d at 916. This requirement stems from the law's policy of encouraging an employer and employee to work out their differences without interrupting the employment relationship. *Hart,* 126 Idaho at 553, 887 P.2d at 1060 (citation omitted). Finally, Teevan must demonstrate that her good cause is connected with employment. *See* I.C. § 72–1366(e). To satisfy this requirement, her reasons for resigning must "arise from the working conditions, job tasks, or employment agreement." IDAPA 09.01.30.04(b). Reasons which relate solely to personal or non-job-related matters are not connected with employment. *Id.*

## C. Substantial and competent evidence supports the Commission's finding that Teevan voluntarily quit her employment without good cause connected with her employment

The Commission found that: (1) Teevan did not meet her burden of establishing that she left her employment for good cause in connection with her employment, and (2) she did not explore or exhaust all reasonable alternatives prior to quitting. The Commission then ruled that Teevan was ineligible for unemployment benefits. We hold that substantial and competent evidence in the record supports the Commission's decision.

### 1. Reasonable person standard

Teevan claimed to have resigned because of harassment on the part of her supervisor Strong. She alleges that Strong threatened to fire her in a private meeting on November 27, 1994; that Strong began a campaign to manufacture discontent with her work among the attorneys in the Division; and that, following a meeting on February 27, 1995, she attempted to resign, but Strong refused to provide her with a letter of reference, thereby "blacklisting" her in the legal community in Boise. A review of both Teevan's testimony and that of other witnesses at the hearing establishes that her perception of these events as threatening her position in the Division was not objectively reasonable.

The record does not support Teevan's view that Strong threatened to fire her on November 27, 1994. At that meeting, Strong and Teevan discussed problems that arose between them after Teevan accused Strong of undermining EchoHawk's gubernatorial campaign. Strong testified that the meeting closed amicably, with Teevan and Strong agreeing that they would work out their problems. Teevan admitted that she gave Strong a hug at the end of the meeting. After the hug, Strong stated: "We'll have to see how we can work together." Teevan apparently construed this as a threat to her job. Considering the purpose of the meeting (*i.e.,* to work out their differences), however, Teevan's construction of Strong's parting statement was not objectively reasonable. Rather than a veiled threat, the statement more reasonably indicated that Strong felt that he and Teevan had resolved their problems. This interpretation is supported by Strong's testimony that he made the statement because he had lost some confidence and trust in Teevan but felt that they "could work through that."

In addition, no evidence in the record supports Teevan's allegations that Strong had embarked on a campaign to discredit her and her work. Instead, the record demonstrates that Strong sought to keep Teevan on the staff and to help her develop her skills. Cheri Jacobus, an attorney in the Division who had doubts about Teevan's abilities, testified that Strong seemed very supportive of her. Despite some dissatisfaction with Teevan's work among attorneys in the Division, Strong encouraged Teevan to remain, assured her that he would work to resolve any problems she had with attorneys within the Division, and promised that she would receive work assignments from him personally.

According to the testimony of Teevan, Strong, and Jacobus, Strong did in fact encourage the attorneys to give Teevan narrow, focused assignments to help her develop confidence in her work, and Teevan did receive assignments directly from Strong. Thus, the record indicates that Strong actively sought to keep Teevan within the Division and encouraged the attorneys to work with her in improving her skills. Finally, Teevan cites Strong's refusal on February 28, 1995, to provide her with a letter of reference as evidence that he meant to end her career in the legal community, that he had "blacklisted" her. Strong's explanation of this event, however, is reasonable. Her request followed the February meeting in which he encouraged her to remain at her job. He responded to the request by explaining that a letter of reference would not be necessary in view of his understanding that she would remain with the Division. There is thus no indication in the record that Strong attempted to blacklist Teevan in the Boise legal community.

We hold that substantial and competent evidence in the record supports the Commission's finding that the average reasonable person would not have felt compelled to quit under the circumstances which Teevan faced on the job. Teevan's belief that her discharge was imminent was not objectively reasonable. Her situation is analogous to that of the claimant in *Hart v. Deary High School*, where the record did not indicate that the claimant had been threatened, intimidated, or forced to resign. 126 Idaho at 553, 887 P.2d at 1060.

### 2. Exhausting reasonable alternatives prior to resigning

 We hold that substantial and competent evidence in the record also supports the Commission's finding that Teevan failed to explore reasonable alternatives prior to resigning. The AG's Office had in place at the time of Teevan's employment an employer dispute resolution policy, of which Teevan was aware. According to this policy, an employee who had problems with his or her supervisor or division chief was supposed to discuss them with the chief of staff, David Hennessey. Despite this policy, Teevan at no time expressed to Hennessey that she was experiencing any problems with Strong or that she wished to transfer to another division. Furthermore, she did not discuss with Strong her concerns. In *Ellis v. Northwest Fruit & Produce*, 103 Idaho 821, 654 P.2d 914 (1982), we addressed the issue of good cause in a somewhat similar situation. In that case, the claimant quit his job because he was not given the sales job for which he believed he was hired and because his work on the employer's loading dock aggravated his preexisting back condition. We upheld the Commission's finding of ineligibility because the claimant had not explored his reasonable alternatives prior to quitting—namely, he had not discussed his dissatisfactions with his employer before resigning. *Id.* at 823, 654 P.2d at 916. Likewise, here, Teevan did not approach Strong with her problems, did not avail herself of the dispute resolution process, and did not attempt to transfer out of the Division. Substantial and competent evidence in the record thus supports the Commission's finding that Teevan did not explore all reasonable alternatives prior to resigning.

### 3. Conclusion

We hold that substantial and competent evidence supports the Commission's finding that Teevan did not meet her burden of establishing that she voluntarily left her employment for good cause connected with her employment.

## V.

## ATTORNEY'S FEES

The AG's Office seeks sanctions under I.A.R. 11.1 against Teevan in the form of attorney's fees incurred in defending this appeal. Rule 11.1 provides that a court may award attorney's fees against any party, or attorney representing a party, who signs briefs or other documents filed with the court where those documents are not well grounded in fact or warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Idaho

Code § 72–1375(b), however, provides in relevant part:

> No individual claiming benefits shall be charged fees or costs of any kind in any proceeding under this act by the commission, the director, any of its or his employees or representatives, or by any court or any officer thereof, except that a court may assess costs if the court determines that the proceedings for a judicial action have been instituted or continued without reasonable ground.

In the unique circumstances of this case, given the state of the record and the above statute, we hold that there is no basis for an award of attorney's fees.

## VI.

### CONCLUSION

We hold that the Commission did not abuse its discretion in denying Teevan's request for a supplemental hearing and that substantial and competent evidence in the record supports the Commission's finding that Teevan is ineligible for unemployment benefits because she voluntarily left her employment without good cause connected with employment. We decline to award costs or attorney's fees to the AG's Office on appeal.

JOHNSON, McDEVITT, SILAK and SCHROEDER, JJ., concur.