715 P.2d 985

**SOFTWARE ASSOCIATES, INC.,**
**Employer-Appellant,**

v.

**STATE of Idaho, DEPARTMENT OF EMPLOYMENT, Respondent.**

**No. 15676.**

Supreme Court of Idaho.

Feb. 28, 1986.

Bradford S. Eidam, of Green Law Offices, Boise, for employer-appellant.

Jim Jones, Atty. Gen. and Roger T. Martindale, Deputy Atty. Gen., Boise, for respondent.

1985 OPINION NO. 165, FILED ON DECEMBER 6, 1985, IS HEREBY WITHDRAWN AND THIS OPINION IS SUBSTITUTED THEREFOR.

BAKES, Justice.

Software Associates, Inc. (Software), appeals a decision of the Industrial Commission holding that computer programming services performed by its corporate officers constitute services in "covered employment" under the Idaho Employment Security Act. I.C. § 72–1316. It is, by now, axiomatic that our review of decisions rendered by the Industrial Commission is limited to questions of law.

Since its incorporation under the laws of the State of Idaho in June, 1980, Software has been in the business of providing computer programming and other software services to the public. Presently, Michal and Marla Marchant, husband and wife, are the sole shareholders of Software.[1] The Mar-

---

1. Initially, another individual, Ralph Harding, held stock in the corporation. The Marchants subsequently bought out Mr. Harding's share.

chants also serve as the only directors and officers of the corporation. As officers of the corporation, the Marchants contract with customers for programming services and then engage programmers to provide such services to the customers. In addition to performing these functions as officers of the corporation, the Marchants themselves are computer programmers and apparently do the bulk of the programming contract work for the corporation. The record reflects that the Marchants spend somewhere between 1% and 7% of their time fulfilling their duties as officers of the corporation.

The Marchants receive their compensation, both as programmers and their draw on profits as shareholders, in one lump sum. Although Software pays all programmers on an "hours worked" basis, the corporate books and records do not show separately the hours and amounts paid the Marchants for computer programming services, as distinguished from profits. Based on the corporate documentation in the record, it is impossible to distinguish between amounts received as programmers *versus* amounts received as shareholders.

The Department of Employment *via* review of Software's corporate records, determined that all payments made to the Marchants during 1981 and 1982 were made for services rendered under "covered employment." A deficiency was assessed against Software for employment security taxes. The deficiency determination was appealed by Software. In a hearing held in November, 1983, a D.O.E. appeals examiner upheld the deficiency determination. The matter was then appealed to the Industrial Commission which, without the presentation of additional evidence, affirmed the decision of the appeals examiner.

█ As we stated in *King v. Dept. of Employment*, 110 Idaho 312, 715 P.2d 982

(1986), the term "covered employment" as used in the Employment Security Act is an expansive term. The act defines "covered employment" broadly to include "an individual's entire service," whether it be "for wages *or* under any contract of hire, written or oral, express or implied." I.C. § 72–1316(a) (emphasis added). As defined, "covered employment" sweeps within its purview employee and independent contractor alike. It is only through later provisions of I.C. § 72–1316 that an independent contractor may "exempt out" of the purview of this term. I.C. § 72–1316(d)(1) only exempts the services of an independent contractor who (1) is free from any right of control over his work, *and* (2) is also engaged "in an independently established trade, occupation, profession, or business." As stated in *King*, this exemption is to be narrowly construed.[2]

█ In its findings of fact and conclusions of law the Industrial Commission stated the following with regard to the Marchants:

"One of the disadvantages of corporate status is that it does not seem possible for individuals who are sole owners, officers, and directors of a corporation to nevertheless orally contract with themselves to create an independent status separate and apart from the corporation, when the service is in fact so intertwined with the corporation in terms of the corporate business and objectives that it cannot in fact be independent."

This statement is correct insofar as it holds that the question of independent contractor status is not reached if the relationship in question is one of employer-employee. As we held in *King*, the two part test of I.C. § 72–1316(d)(1) is not even reached if, under all the facts and circumstances, the factfinder determines that the work relationship is one of employer-employee.[3]

---

**2.** In addition to the act's history, which indicates that the legislature intended that the definition of covered employment be substantially broader than the common law definition of employer-employee-independent contractor, exemptions of taxing statutes and most remedial

social legislation are traditionally given narrow constructions. *King* at 312, 715 P.2d 982.

**3.** As we indicated in *King*, several factors may be considered in determining whether an employer-employee relationship exists. Among such factors are (1) the way the corporation

However, as we also held in *King*, the mere fact of incorporation does not *ipso facto* render it impossible for sole shareholder-officers to be engaged in an independent occupation and contract with the corporation.

We reverse the decision of the Industrial Commission and remand for further findings consistent with this opinion. By way of guidance on remand, I.C. § 1–205, additional factors which the commission may wish to consider are the underlying policies of the Employment Security Act as stated by the legislature in I.C. § 72–1302. The act is intended to cover employment arrangements which pose a threat to the worker in terms of *involuntary* unemployment.

Reversed and remanded. Costs to appellant.

DONALDSON, C.J., and SHEPARD, BISTLINE and HUNTLEY, JJ., concur.

represented its relationship to the Marchants prior to the present litigation, including its representations to the Internal Revenue Service; (2) statements made to the Department of Employment; (3) method of payment, in particular whether federal, state and FICA taxes are withheld from paychecks; and (4) whether certain benefits (life or health insurance) are provided the worker at the corporation's expense.