951 P.2d 1264

**Re Charles E. Borland, SSN 436–42–3833, Claimant.**

**Michael L. & Christine K. BEALE, d/b/a Chuck's Auto Sales & d/b/a Chris Beale's Day Care Center, Employer Acct. No. 000124346–2, Employers–Appellants,**

v.

**STATE of Idaho, DEPARTMENT OF EMPLOYMENT, Respondent.**

**No. 23127.**

Supreme Court of Idaho, Coeur d'Alene, October 1997 Term.

Dec. 24, 1997.

Danny J. Radakovich, Lewiston, for employers–appellants.

Alan G. Lance, Attorney General, Paul F. Kime, Deputy Attorney General, Boise, for respondent. Paul F. Kime, argued.

JOHNSON, Justice.

This is an unemployment coverage, contribution, and compensation case. We conclude that there is substantial and competent evidence to support the findings of the Industrial Commission (the Commission) that the employers had employees who were covered by the unemployment compensation act (the act) and that one of the employees is entitled to unemployment compensation. We conclude that the Commission's calculation of the amount of unemployment contributions is not consistent with its decision concerning the employees engaged in covered employment. Therefore, we remand the case to the Commission for a recalculation of this amount.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS

Michael and Christine Beale (the Beales) operated two businesses, a used car lot (the car lot) and a day care facility (the day care). Charles Borland (Borland) began working at the car lot in October 1985. With the exception of two brief periods when he voluntarily quit, Borland continued working until August 1990, when he quit and sought unemployment compensation. In his response to Borland's unemployment claim, Michael Beale stated that he owned the car lot as a sole proprietor. The Department of Employment (the department) determined that Borland was eligible for benefits and that the Beales' employer account was chargeable for Borland's unemployment benefits. The department also determined that the Beales had failed to report wages for other employees for the purposes of unemployment contributions. The Beales protested these determinations The appeals examiner upheld the determinations.

Both the Beales and the department sought review of the appeals examiner's decision by the Commission. The Commission upheld the decision of the appeals examiner that the Beales were covered employers with respect to Borland, as well as drivers, mechanics, and day care workers, and that Borland was eligible for unemployment benefits.

The Beales appealed. This Court dismissed the appeal for a lack of finality because the Commission had not determined the period and amount of liability for the unemployment contributions. The case was remanded to the department to determine the remaining issues. The department determined that the Beales were liable from January 1, 1987 through June 30, 1990, and owed $3,171.05 for unpaid unemployment insurance tax contributions. The Beales protested this decision. The appeals examiner determined that the period of liability began on October 1, 1987, and reduced the amount due to $2,367.73. The Beales appealed to the Commission, which affirmed the appeals examiner's decision and incorporated the conclusions of law set forth in the Commission's prior decision. The Beales appealed.

Preliminarily, we note that the department contends the Beales did not appeal the Commission's determination of Borland's eligibility because they named only the department, and not Borland, as a respondent in their notice of appeal. Although it is true that the notice of appeal initially states that the appeal is against "the above-named respondent," the portion of the notice of appeal stating to whom the notice of appeal is addressed lists Borland as a respondent. The Beales served on Borland by mail a copy of the brief they submitted to this Court. Therefore, we conclude that the appeal includes Borland's eligibility.

## II.

### THE COMMISSION CORRECTLY ASSIGNED THE BURDEN OF PROOF.

■ The Beales assert that the Commission incorrectly assigned to them the burden of proof concerning whether Borland was a covered employee. We disagree.

The Beales agree that they bear the burden of proving that the drivers, mechanics, and day care workers fall within the exemption to covered employment. *See Henggeler Packing Co. v. Department of Employment,* 96 Idaho 392, 529 P.2d 1264 (1974). They contend, however, that because the issue of covered employment with respect to Borland originated from his claim for unemployment benefits, Borland bears the burden of showing that he was engaged in covered employment.

■ Under the act, covered employment and eligibility for benefits are conceptually distinct proceedings. Covered employment involves a determination under section 72–1316 of the Idaho Code (I.C.) whether a covered employer must contribute to the unemployment security fund. Personal eligibility depends on whether the eligibility requirements for benefits in I.C. § 72–1366 are met. I.C. § 72–1366 does not explicitly require, as a condition of receiving benefits, an employee to prove that the employee was engaged in covered employment.

■ The personal eligibility conditions of I.C. § 72–1366 assume that the worker was engaged in covered employment. In the case of a claim where the putative employer disputes that a worker was engaged in covered employment, covered employment cannot be assumed and the worker must show engagement in covered employment as part of the claim for benefits. Under I.C. § 72–1316(d), this requires that the worker show performance of services for remuneration.

If the putative employer does not dispute that the claimant received remuneration for services performed, then under I.C. § 72–1316(d) there is covered employment, subject to the putative employer showing that an exemption applies. In the present case, Borland met his burden of production by stating in his claim for benefits that he received remuneration for services. The Beales did not refute Borland's statement that he received remuneration from them. This shifted the burden to the Beales to show that the exemption applied. Therefore, we conclude that the Commission correctly assigned the burden of proof.

## III.

### THERE IS SUBSTANTIAL AND COMPETENT EVIDENCE TO SUPPORT THE COMMISSION'S FINDINGS CONCERNING COVERED EMPLOYMENT.

The Beales assert that the Commission incorrectly found that Borland, the drivers and the mechanics were employees of the Beales covered by the unemployment compensation act. We disagree.

The portion of the act defining covered employment first states that "covered employment means an individual's entire service ... performed by [the individual] for wages or under any contract of hire, written or oral, express or implied." I.C. § 72–1316(a). In essence, the act creates a default position that "[s]ervices performed by an individual for remuneration shall ... be covered employment." I.C. § 72–1316(d). This Court has stated that the term "covered employment" is "an expansive term" and "sweeps within its purview employee and independent contractor alike." *Software Assoc., Inc. v. Department of Employment,* 110 Idaho 315, 316, 715 P.2d 985, 986 (1986) (*Software*). The act exempts from covered employment a worker who is both (1) free from direction and control in the performance of work, and (2) engaged in an independently established trade. I.C. § 72–1316(d). This Court, after recognizing that the act is social legislation, has stated that "[i]n construing ... social

legislation, exemptions from coverage are narrowly construed." *King v. Department of Employment,* 110 Idaho 312, 313, 715 P.2d 982, 983 (1986). In *King,* the Court also examined the various statutory versions of the exemption and concluded that the history of I.C. § 72–1316(d) suggested that a narrow construction was appropriate. *Id.*

In *Software,* the Court stated that "the question of independent contractor status is not reached if the relationship in question is one of employer-employee." *Software,* 110 Idaho at 316, 715 P.2d at 986 (citing *King v. Department of Employment,* 110 Idaho 312, 715 P.2d 982 (1986)). In a footnote, the *Software* Court set out the following four factors as pertinent to the determination whether an employer-employee relationship exists: (1) the way that the business entity represented its relationship with the workers prior to the present litigation, including representations to the Internal Revenue Service; (2) statements made to the department; (3) method of payment, in particular whether federal, state, and FICA taxes are withheld from paychecks; and (4) whether life or health benefits are provided to the worker at the business entity's expense. *Id.*

■■ Following the preliminary inquiry, a putative employer must prove that a worker is free from direction and control. In making this determination, the test is whether the putative employer has control over the "details of the work, the manner, method or mode of doing it, the means by which it is to be accomplished, or, specifically, the details, manner, means, or method of doing the work, as contrasted with the result thereof." *Vendx Mktg., Inc. v. Department of Employment,* 122 Idaho 890, 896, 841 P.2d 420, 426 (1992). In addition, the freedom from direction and control must exist in theory (under a contract of service) and in fact. I.C. § 72–1316(d)(1)(A). Finally, the employer must demonstrate that it lacked a right to control the workers. *Totusek v. Department of Employment,* 96 Idaho 699, 702, 535 P.2d 672, 675 (1975).

■ The putative employer must also prove that the workers are "engaged in an independently established trade, occupation, profession, or business," which is accomplished by considering, as a starting point, the following two factors set out by this Court:

1. Whether the worker has the authority to hire subordinates; and

2. Whether the worker owns major items of equipment or incurs substantial unreimbursed expenses.

*Vendx,* 122 Idaho at 896, 841 P.2d at 426. In *Vendx,* the Court, while noting that the next factor was of "substantially less significance," stated that whether either party would be liable to the other party upon peremptory or unilateral termination of the business relationship is a factor that may also be considered. *Id.* The Court also recognized that the above-mentioned factors were neither a "prerequisite to finding that the worker is engaged in an independent trade or business" nor were they an exhaustive list of factors to be considered. *Id.* The Court has also suggested other pertinent factors, such as:

1. Skills, qualifications, and training required for the job;

2. Method of payment, benefits, and tax withholding;

3. Right to negotiate agreements with other workers;

4. Right to choose sales techniques or other business techniques;

5. Right to determine hours;

6. Existence of outside businesses or occupations;

7. Special licensing or regulatory requirements for performance of work;

8. Whether the work is part of the employer's general business;

9. The nature and extent of the work;

10. The term and duration of the relationship; and

11. The control of the premises.

■ *Id.*; *National Trailer Convoy, Inc. v. Employment Sec. Agency,* 83 Idaho 247, 251,

real

360 P.2d 994, 996 (1961). Finally, if there is a declaration that a worker is an independent contractor, for example, by contract or agreement, then this status must also be considered. *Id.*

### A. There is Substantial and Competent Evidence That Borland's Employment is Covered.

■ The Commission found that Borland was not free from Michael Beale's direction and control in his duties at the car lot. The Commission's finding was based on Michael Beale's response to Borland's claim for unemployment: "[Borland] quit as a result of a conversation wherein he desired to have more to do with the policies of Chuck's Auto Sales as to the purchase and sale of merchandise. When his request was denied, he quit." The Commission found it important that only Michael Beale had authority to issue checks from the account containing the greater amount of money and that the checks written by Borland on the smaller account were generally pre-authorized by Michael Beale.

The Commission also determined that Borland was not engaged in an independently established trade or business. The Commission specifically explored whether Borland was a partner and examined I.C. § 53–307, which provides that "[t]he receipt of a person of a share of profits of a business is prima facie evidence that he is a partner in the business." The Commission noted that this was only prima facie evidence but found Michael Beale's original statement of ownership on his response to Borland's claim for unemployment benefits, and the fact that Michael Beale's dealer's license and business licenses were in his name only to be more indicative of Borland's status as an employee. Additionally, the Commission noted that Michael Beale filed federal income taxes as a sole proprietor rather than using the informational tax return required of partnerships and joint venturers. There is substantial and competent evidence to support the Commission's finding that Borland was engaged in covered employment.

### B. There is Substantial and Competent Evidence That the Drivers' Employment Is Covered.

■ The Commission found that the drivers were neither free from direction and control nor engaged in an independently established trade or business. The Commission relied on the drivers' testimony that Michael Beale chose the route of travel, where the drivers would stop for food and gas, and whether the drivers could make any repairs if there were automotive problems on the return trip from the auction. The Commission also found that the drivers were not engaged in an independently established trade or business, and concluded they were engaged in covered employment and were not independent contractors. The Commission relied on testimony that Michael Beale paid for the drivers' transportation, fuel, food, and accommodations and that Beale owned and insured the vehicles driven by the drivers from the auctions to the car lot. The Commission also noted that the drivers could only bid for Michael Beale at the auction if the driver had a dealer identification card showing who had purchased the automobile. The Commission did not disregard those factors supporting independent contractor status. Instead, it found those factors to be less compelling and that the Beales had not met their burden of proving that the drivers were exempt from covered employment. There is substantial and competent evidence to support the Commission's finding that the drivers were engaged in covered employment.

### C. There is Substantial and Competent Evidence That the Mechanics' Employment Is Covered.

■ The Commission found that the mechanics were free from Michael Beale's direction and control but that they were not engaged in an independently established business. The Commission relied on the fact that the Beales provided the mechanics with the parts, a place to work, and major items of equipment. The Commission did not find the fact that the mechanics supplied their own tools to be dispositive because that arrange-

ment is customary in the industry. The Commission compared the mechanics to the sprinkler pipe movers in *Larsen v. Department of Employment,* 106 Idaho 382, 679 P.2d 659 (1984), who supplied only their gloves, boots, and aprons and were not found to be engaged in an independently established business by this Court. Finally, the Commission noted that it had not disregarded other factors in favor of independent contractor status. Instead, it had found those factors to be less compelling and that the Beales had not met their burden of proving that the mechanics did not render services in covered employment. There is substantial and competent evidence to support the Commission's finding that the mechanics were engaged in covered employment.

## IV.

### THE COMMISSION DID NOT DETERMINE THAT THE MISCELLANEOUS PERSONS WERE ENGAGED IN COVERED EMPLOYMENT.

 The Beales assert that the Commission should not have determined that Leonard Beale, Joan Schoonmaker, Bud Goertzen, Dorothy Lamson, Lorian, and Ernie Wilson (the miscellaneous persons) were engaged in covered employment by the Beales, and that the amounts paid to the miscellaneous persons should not have been included in the calculations of the amount of unemployment contributions the Beales owe. We conclude that the Commission did not determine that the miscellaneous persons were engaged in covered employment, but that the amounts paid to them were included in the contribution calculations, necessitating that we vacate and remand the determination of the contributions the Beales owe.

None of the determinations of covered employment specifically included the payments to the miscellaneous persons. There was testimony presented about them, however, and the appeals examiner stated: "Dollar amounts paid to Leonard Beale and Lorien (?) in 4th quarter 1987, Dorothy Lemson in

4th quarter 1988, . . . are not considered wages nor subject to the employer taxes." In its decision before the first appeal, the Commission's order stated as follows: "The Decision of the Appeals Examiner is AFFIRMED. Appellants are covered employers with respect to Claimant, its mechanics, drivers, and day-care workers." It appears to us that by this disposition of the case, the Commission intended to exclude the miscellaneous persons as being engaged in covered employment. Nevertheless, it also appears to us that amounts paid to the miscellaneous persons were included in the computations of the unemployment contributions the Beales owe. Therefore, we must vacate the determination of the amount of contributions owed and remand this portion of the case to the Commission for recalculation of the amount of tax the Beales owe.

## V.

### THERE IS SUBSTANTIAL AND COMPETENT EVIDENCE TO SUPPORT THE COMMISSION'S AWARD OF UNEMPLOYMENT BENEFITS TO BORLAND.

 The Beales assert that the Commission should not have awarded unemployment benefits to Borland. We conclude that there is substantial and competent evidence to support the Commission's award.

Preliminarily, we note that the Beales contend that the Commission relied on a comparison of Borland's earnings in the first half of 1989 with those in the first half of 1990 and that the underlying findings of fact made by the appeals examiner are clear error. The "informal" finding of fact made by the appeals examiner compares Borland's earnings from January to June of 1989 to the same period in 1990. The Beales contend that the bases for comparison are not the same because Borland did not work during part of the six-month period in 1990. The Commission did not rely on the finding of the appeals examiner on this question, but made its own decision and never discussed the comparison. Therefore, we do not address the Beales' contention on this point.

Turning to the question of Borland's good cause for quitting his employment at the car lot we focus on the following definition of good cause:

> In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman.

*Burroughs v. Employment Sec. Agency,* 86 Idaho 412, 414, 387 P.2d 473, 474 (1963). Also, a change of working conditions, such as a reduction in hours or wages, may sometimes give good cause to quit employment. *Stone v. South Hill Chevron,* 99 Idaho 162, 163, 578 P.2d 1093, 1094 (1978). In the present case, the Commission found that the quality of vehicles available for sale at the car lot began to decline, which made it more difficult for Borland to earn commissions. The Commission also found that when Borland "agreed to sell vehicles for [the car lot], the overall quality of vehicles was an implicit term of the employment agreement because [Borland] agreed to be paid on commission" and that the Beales' "decision to purchase inferior merchandise manifested a change in that agreement." There is substantial and competent evidence in the record to support the Commission's determination that Borland quit for good cause.

## VI.

### CONCLUSION

We affirm the orders of the Commission, except the order determining the amount of unemployment contributions the Beales owe, which we vacate and remand to the Commission for recalculation.

We award no costs on appeal.

TROUT, C.J., and SILAK, SCHROEDER and WALTERS, JJ., concur.