116 P.3d 18

**EXCELL CONSTRUCTION, INC., Employer Account: 001790501, Employer–Appellant,**

v.

**STATE of Idaho, DEPARTMENT OF LABOR, Respondent.**

No. 30931.

Supreme Court of Idaho, Boise, April 2005 Term.

June 21, 2005.

---

Wetzel & Wetzel, Coeur d'Alene, for appellant. Dana L.R. Wetzel argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Anne Baker Wilde, Deputy Attorney General, argued.

BURDICK, Justice.

## I. NATURE OF THE CASE

Excell Construction Inc. (Excell) appeals a ruling by the Idaho Industrial Commission finding Excell liable for unpaid unemployment insurance taxes. The Industrial Commission determined Excell had mischaracterized many employees engaged in covered employment as "independent contractors," resulting in Excell's alleged unemployment insurance underpayment. We reverse and remand to the Industrial Commission for further proceedings.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Excell is in the business of selling and installing sheetrock, also known as "drywall." The company bids for sheetrocking and related work offered by primary contractors and homeowners, providing both the materials and the labor needed to complete a project.

Excell maintains supplies of sheetrock and related items in a central storehouse, and uses company trucks and heavy equipment to haul these supplies to construction sites. On site, "hangers" cut and install the sheetrock. When they are finished, other workers clear away the resulting debris. Next "tapers" arrive to tape the sheetrock slabs and apply "mud" to make the walls appear seamless. They are followed by workers who apply texture finishes and paint.

Excell categorizes some of its workers as "employees," and some as "independent contractors." Those workers who transport the sheetrock to construction sites, as well as those who clean the site and those who apply paint and texture are designated by Excell as employees. In contrast, Excell permits hangers and tapers to elect whether they will be classified as employees or as independent contractors. For those hangers and tapers categorized as employees, Excell deducts taxes and social security from their wages. For those who are categorized as independent contractors, Excell makes no such deductions. Workers can elect to provide worker's compensation coverage themselves, or Excell will pay for worker's compensation coverage but adjust the worker's rate of reimbursement accordingly. Most of the hangers and tapers that perform work for Excell are defined by the company as independent contractors.

Excell bids on the projects its workers perform, and the workers have no part in the bidding process. After reporting in as available for work or being contacted by Excell, hangers and tapers are assigned to work projects. They are paid a flat rate based on the footage of drywall completed.

Excell requires workers designated as independent contractors to sign documents Excell styles as "sub-contract agreement[s]."

These open-ended documents are signed only by the workers and place responsibility on the workers to pay any appropriate taxes and to provide liability and worker's compensation insurance on their own. Excell does not enter into written contracts with its hangers or tapers regarding the individual projects on which they work.

The Industrial Commission found that Excell determines what materials are needed and provides these at the jobsite at its own expense. The hangers and tapers generally supply personal tools. Workers are permitted to charge tools on an Excell account and reimburse the company later.

The Industrial Commission additionally found that hangers and tapers contact Excell when they have questions about a particular project. Hangers and tapers have the authority to hire others to assist in completing projects, but this is rarely done. Most of those Excell designates as independent contractors perform work only for Excell, although they are permitted to seek work elsewhere. Either Excell or its workers may terminate the working relationship between them without incurring any liability beyond reimbursement for any labor already performed.

In March 2001, the Idaho Department of Commerce and Labor (the Department) conducted a compliance audit of Excell covering the first quarter of 1999 through the first quarter of 2001. Following the audit, the Department issued a status determination concluding that the hangers and tapers represented by Excell as independent contractors had performed services in covered employment and therefore were reportable and taxable for unemployment insurance purposes. As Excell had not reported these workers, the company was assessed for unpaid unemployment insurance taxes and penalties in the amount of $10,671.77, later adjusted downward to $6,353.26.

Excell appealed the status determination, and two days of hearings were conducted before a Department appeals examiner. After making detailed findings of fact, the appeals examiner upheld the Department's status determination. Excell appealed to the Industrial Commission, requesting the Industrial Commission consider additional evidence not presented at the hearing before the appeals examiner. The Industrial Commission declined to consider further evidence, and after a *de novo* review of the record it affirmed the appeals examiner's decision.

Excell filed a timely appeal, which is presently before this Court.

## III. STANDARD OF REVIEW

"On appeal from the Industrial Commission, this Court exercises free review of the Commission's legal conclusions, but will not disturb findings of fact if they are supported by substantial and competent evidence." *Steen v. Denny's Restaurant,* 135 Idaho 234, 235, 16 P.3d 910, 911 (2000). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Uhl v. Ballard Medical Products,* 138 Idaho 653, 657, 67 P.3d 1265, 1269 (2003). The conclusions reached by the Industrial Commission regarding the credibility and weight of evidence will not be disturbed unless the conclusions are clearly erroneous. *Hughen v. Highland Estates,* 137 Idaho 349, 351, 48 P.3d 1238, 1240 (2002). We will not re-weigh the evidence or consider whether we would have drawn a different conclusion from the evidence presented. *Id.*

## IV. ANALYSIS

### A. Excell's motion to allow additional evidence.

Excell argues the Industrial Commission abused its discretion in refusing to consider additional evidence not presented in the hearing conducted by the appeals examiner. The evidence at issue related to Shawn Stovall, who formerly installed drywall for Excell and who served as one of the Department's witnesses at the hearing. Stovall testified he did not have an independent business when he worked for Excell, and that despite his ostensible status as an "independent contractor" he was fired from his position with the company.

After his termination, Stovall applied with the Department for unemployment benefits. Because Excell had not reported Stovall's work for the purposes of unemployment insurance, he had no qualifying wages on record with the Department. Stovall's request for benefits came shortly after the Department issued its status determination finding that Excell's drywall installers were engaged in covered employment for unemployment insurance purposes. Because the Department found Stovall was entitled to benefits, he was allowed to receive unemployment insurance payments. However, the Department warned Stovall that Excell was appealing the status determination to the Industrial Commission—if the decision regarding the status of Stovall and the other drywall installers were reversed, Stovall might be required to repay the benefits he had received.

Some time after the first day of the hearings conducted by the appeals examiner, Excell obtained from the Department documents showing the Department agreed to pay unemployment benefits to Stovall. Contending that Stovall's receipt of unemployment compensation undermined his credibility as a witness, Excell asked the Industrial Commission to consider the new evidence regarding Stovall's credibility although it was not presented at the hearing below. In its "application for rehearing/reconsideration" submitted to the Industrial Commission, Excell described the new evidence, arguing it was relevant and significant. Excell did not, however, mention why it failed to raise the evidence previously.

 In reviewing a decision by an appeals examiner, the record before the Industrial Commission is the same as that considered by the appeals examiner, "unless it appears to the commission that the interests of justice require that the interested parties be permitted to present additional evidence." I.C. § 72–1368(7). The Industrial Commission's decision to permit or exclude evidence not raised before the examiner is discretionary. *Id.; Teevan v. Office of the Attorney General,* 130 Idaho 79, 81, 936 P.2d 1321, 1323 (1997). A party before the Industrial Commission does not possess "the unbridled right to present a substan-

tially new case, absent some showing as to why the evidence had been unavailable earlier." *Teevan,* 130 Idaho at 81, 936 P.2d at 1323 (quoting *Rogers v. Trim House,* 99 Idaho 746, 750, 588 P.2d 945, 949 (1979)).

The Industrial Commission is empowered to "decide all claims for review filed by any interested party in accordance with its own rules of procedure not in conflict [with other law]." I.C. § 72–1368(7). The "Rules of Appellate Practice and Procedure under the Idaho Employment Security Law" adopted by the Industrial Commission require a party requesting a new hearing to submit with its request:

1. the reason for requesting the hearing;
2. whether the party desires to present evidence to the Industrial Commission in addition to that presented to the appeals examiner;
3. a description of the evidence the party desires to present;
4. an explanation of why the proposed evidence is relevant to the issues before the Industrial Commission; and
5. reason why the proposed evidence was not presented before the examiner.

R.A.P.P. 6(B).

 In the present case, Excell's request for a rehearing and the admission of new evidence described the evidence at issue, why the appeal was being brought, and the alleged relevance and significance of the evidence. This met the first four requirements of R.A.P.P. 6(B) listed above. Excell neglected, however, to inform the Industrial Commission why the proposed evidence was not presented earlier, and therefore the fifth requirement of R.A.P.P. 6(B) was not satisfied. In its briefs to this Court, Excell for the first time claims the Department was slow to turn over the documents in question, and therefore Excell's failure to refer to those documents in the hearing was excusable. This argument was never presented to the Industrial Commission. This Court will not consider arguments raised for the first time on appeal. *Combs v. Kelly Logging,* 115 Idaho 695, 698, 769 P.2d 572, 575 (1989).

Excell also contends the Industrial Commission mistakenly determined Excell had

possession of the documents prior to the appeals examiner hearings. Even if the Industrial Commission's determination was mistaken, however, the Commission's discussion of when Excell obtained copies of the documents was secondary to its primary finding regarding the requirements of R.A.P.P. 6(B).

Because Excell did not explain in its motion to the Industrial Commission why the disputed evidence was unavailable at the hearing below, this Court finds the Commission's refusal to conduct a new hearing or to consider new evidence was not an abuse of discretion.

## B. Employment Status

Idaho's Employment Security Law provides assistance for workers who face unemployment through no fault of their own. I.C. § 72–1302. Employers are obligated to pay unemployment insurance taxes based on the wages they pay to employees engaged in "covered employment." *John L. King, P.A. v. Dept. of Employment,* 110 Idaho 312, 313, 715 P.2d 982, 983 (1986). These employer contributions finance a trust fund that supports the unemployment insurance system. *Id.* When interpreting social legislation such as the Employment Security Act, "exemptions from coverage are narrowly construed." *Id.*

After weighing the legally relevant factors, the Industrial Commission determined Excell's hangers and tapers were "covered employees" for which the company was liable for unpaid unemployment insurance taxes and penalties. Excell disagrees, arguing the Industrial Commission misapplied the facts to the law.

Once it is shown that a worker received remuneration from a putative employer for performing services, that worker will be found to have been engaged in covered employment, "subject to the putative employer showing that an exemption applies." *Beale v. Dept. of Employment,* 131 Idaho 37, 41, 951 P.2d 1264, 1268 (1997). "[T]he term 'covered employment' is an 'expansive term' and 'sweeps within its purview employees and independent contractor

alike.' " *Id.* (quoting *Software Assoc., Inc. v. Department of Employment,* 110 Idaho 315, 316, 715 P.2d 985, 986 (1986)). "[T]he status of independent contractor is not enough to avoid coverage." *King,* 110 Idaho at 314, 715 P.2d at 984 (quoting *Swayne v. Dept. of Employment,* 93 Idaho 101, 104, 456 P.2d 268, 271 (1969)).

In order to merit an exemption from the presumption that services for remuneration are covered employment, the putative employer must demonstrate two things:

(a) That the worker has been and will continue to be free from control or direction in the performance of his work, both under his contract of service and in fact; *and*

(b) That the worker is engaged in an independently established trade, occupation, profession, or business.

I.C. § 72–1316(4) (emphasis added). Excell does not dispute that its hangers and tapers performed services in exchange for remuneration. The Industrial Commission's determination of whether a worker was engaged in covered employment is a question of fact this Court will uphold provided the findings are supported by substantial and competent evidence. *See Stoica v. Pocol,* 136 Idaho 661, 663, 39 P.3d 601, 603 (2001) (stating that a worker's status as an employee or independent contractor is a factual determination); *Beale,* 131 Idaho at 43–44, 951 P.2d at 1270–71 (upholding findings of covered employment because they were supported by substantial and competent evidence). As a result, Excell must show the Industrial Commission lacked substantial and competent evidence on which to base its determination.

### 1. Freedom From Control

The first half of the test a putative employer must satisfy in order to qualify for an exemption from the presumption of covered employment regards the worker's freedom from employer control. Idaho Code § 72–1316(4)(a) requires a showing "[t]hat the worker has been and will continue to be free from control or direction in the performance of his work, both under his contract of service and in fact ...." The appropriate

test in making this determination considers whether the putative employer has control over the details of the work, the manner, method or mode of doing the work, and the means by which the work is to be accomplished, as contrasted with the results of the work. *Beale*, 131 Idaho at 42, 951 P.2d at 1269; IDAPA 09.01.35.112.03. Additionally, the freedom from direction and control must exist in theory (under a contract of service) and in fact; and the putative employer must demonstrate that it lacked a right to control the worker. *Beale*, 131 Idaho at 42, 951 P.2d at 1269; IDAPA 09.01.35.112.03.

In making its determination, the Industrial Commission noted that Excell provided the materials with which the hangers and tapers worked, and transported these items to the jobsite. The Commission found that Excell dictated the "contracts" between itself and its workers regarding insurance, and Excell controlled the rate at which it compensates its hangers and tapers. Additionally, the Industrial Commission observed that Excell retained the ability to call a worker back to correct poorly completed work, and retained the right to discharge its "subcontractors" without cause. The Commission found that in one case Excell actually exercised this option, discharging Stovall.

 In response, Excell argues that the control ascribed to it was limited to control over the *results* of the work, not the "manner, method or mode" by which it was accomplished. Unlike control over the manner, method or mode by which a task is performed, merely exerting control over the results of the work does not suggest an employment relationship. *Beale*, 131 Idaho at 42, 951 P.2d at 1269. Indeed, the evidence attributed by the Industrial Commission as showing direction and control relate to Excell's interest in the quality of the end product rather than the methods by which that outcome is achieved. Setting the rate of compensation is unrelated to control of the work process itself. Similarly, Excell's practice of dictating who pays for insurance is part of the relationship between Excell and its workers, but sheds no light on which party controls how actual work is performed. Excell's ability to require its workers to cor-

rect poorly completed work suggests only a concern with results, not methods.

Excell's practice of providing sheetrock and its ability to discharge workers present closer questions. Providing sheetrock could suggest that Excell desired to control the specific nature of the drywall to be installed. However, Excell plausibly argues that supplies were provided simply as a means of assuring the consistency of the materials, to thereby assure the quality of the results. The matter of who supplies materials may be relevant in examining the relationship between the company and workers, but not to this portion of the analysis concerning control or direction over how work was performed.

 Excell's ability to discharge workers could be suggestive of a right to control the methods by which work is performed, at least in that it demonstrates Excell could exert power over its workers if it wished to do so. The record is unclear, however, whether the one instance in which Excell exercised this ability arose from a personality conflict or a disagreement regarding the work process. The Industrial Commission did not reach a finding on that point, noting only that "Shawn Stovall testified that he was fired from a job with [Excell] after he got into a dispute with one of [Excell's] principals and would not apologize." The ability of an employer to discharge a worker at will provides "little assistance in determining the relationship between the parties." *Livingston v. Ireland Bank*, 128 Idaho 66, 70, 910 P.2d 738, 742 (1995). "[T]his is particularly true where the services rendered are a succession of individual tasks separately assigned when the need arises on an occasional basis." *Id.* The ability of either party to be able to unilaterally terminate a business relationship is nevertheless a factor that may be considered with respect to whether the worker is engaged in and independently established trade, occupation, profession, or business. *Beale*, 131 Idaho at 42, 951 P.2d at 1269. However, this Court has *not* considered it as a factor relevant to the question of whether a worker is free from direction or control in the per-

formance of his work. *See, e.g., id.* (setting forth the factors to be considered when determining whether a worker is engaged in covered employment, and placing unilateral termination without liability as a factor only as to whether the worker is "engaged in an independently established trade, occupation, profession, or business").[1]

The legal conclusion that Excell controlled or directed how the hangers and tapers in question performed their work was not supported by the facts cited by the Industrial Commission. It is not a matter of the weight of evidence, but instead the Commission misapplied the facts to the law by relying on facts unrelated to the applicable legal test.

## 2. Independently Established Trade, Occupation, Profession, Or Business

The Industrial Commission, having arrived at the conclusion that the drywall installers were not free from Excell's direction and control, only summarily addressed the independently established trade, occupation, profession, or business requirement of I.C. § 72–1316(4)(b). In oral argument and in its brief to this Court, the Department conceded that the Industrial Commission issued no findings of fact or conclusions of law regarding whether the drywall installers were independently established. Because the Industrial Commission misapplied the law regarding the "control" test in I.C. § 72–1316(4)(a) and the Department has conceded the Commission never reached the "independence" test in I.C. § 72–1316(4)(b), we remand this case back to the Industrial Commission.

■■■ It should be further noted that employer liability for unpaid unemployment insurance taxes is assessed with reference to each individual worker. *See* I.C. § 72–1316. Consequently, when the legally relevant facts apply differently to some workers than to others, the Industrial Commission must reach individualized findings as to each worker, or to each similarly situated group of workers. *See Anderson v. Larsen,* 136 Idaho 402, 406, 34 P.3d 1085, 1089 (2001) (stating

that legal conclusions must be supported by the facts found). Here, the Industrial Commission acknowledged three of the drywall installers testified they have independent businesses registered with the State, yet the Industrial Commission dismissed that factor "when balanced against the rest of the evidence." Also, the Industrial Commission observed that only one of Excell's workers hired others to work under him. Because this individual was a rare exception, the Commission determined Excell's workers generally did not hire their own crews. The Commission did not state whether the different facts that applied to the one worker who hired his own crew merited a different result with regard to that worker. Where individual facts are different, individual findings for each worker or similarly situated group of workers is required.

## C. Attorney Fees

■■■ Excell requests attorney's fees on appeal pursuant to I.A.R. 41, I.A.R. 11.1, I.C. §§ 72–708 and 12–117. Idaho Appellate Rule 41 provides the procedure for requesting attorney fees on appeal, but is not authority alone for awarding fees. *Shawver v. Huckleberry Estates,* 140 Idaho 354, 365, 93 P.3d 685, 696 (2004). Idaho Code § 72–708 provides that practice and procedure under the worker's compensation law be simple and "as far as possible in accord with the rules of equity." Like I.A.R. 41, I.C. § 72–708 does not itself provide authority for an award of attorney fees.

To support its request for attorney fees, Excell argues I.A.R. 11.1 applies to the present case. This rule provides for sanctions when a brief or other document submitted by a party is not well grounded in fact, is not warranted by existing law or a good faith argument, and "is interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation." I.A.R. 11.1; *Rivas v. K.C. Logging,* 134 Idaho 603, 609, 7 P.3d 212, 218 (2000). Here, the Department's position is

1. In conflict with this Court, the Idaho Administrative Code allows consideration of termination without liability as a factor in *both* parts of the

inquiry found in I.C. § 72–1316(4). IDAPA 09.01.35.112.03(d); IDAPA 09.01.35.112.04(n).

not interposed for an improper purpose. The Court will also not award fees under I.C. § 12–117.

## V. CONCLUSION

The Court having found the legal conclusion concerning I.C. § 72–1316(4)(a) is unsupported by the facts referenced by the Industrial Commission, and there are no findings of fact nor conclusions of law regarding I.C. § 72–1316(4)(b), this case is reversed and remanded to the Industrial Commission for further proceedings. Costs to the appellant.

Chief Justice SCHROEDER, Justices TROUT, EISMANN and JONES, concur.