# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 40462

WESTERN HOME TRANSPORT, INC.,

    Claimant-Appellant,

v.

IDAHO DEPARTMENT OF LABOR,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)

Boise, January 2014 Term

2014 Opinion No. 19

Filed: February 11, 2014

Stephen W. Kenyon, Clerk

_____

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Commission is <u>vacated</u> and this case is remanded for further proceedings consistent with this Opinion. Costs on appeal are awarded to appellant. No attorney's fees are awarded.

David H. Leroy, Boise, attorney for appellant.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for Respondent. Cheryl George argued.

Holden, Kidwell, Hahn & Crapo, PLLC, Idaho Falls, *amicus curiae*.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

The Idaho Department of Labor (the Department) determined that Western Home Transport, Inc. (Western) owed $13,277.93 in unemployment insurance taxes and penalties because the owners/operators who hauled goods interstate for Western were engaged in covered employment under Idaho's Employment Security Law. On appeal by Western, the Idaho Industrial Commission (the Commission) affirmed the Department's decision. Western now appeals the Commission's decision to this Court. The decision of the Commission is vacated and the case is remanded for further proceedings consistent with this opinion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Western is an Idaho corporation that facilitates the interstate transportation of oversized mobile homes from shippers to purchasers. Western does not own any equipment to transport the

1

homes. Instead, Western leases equipment from owner/operators. The owner/operators then use their own equipment to transport the homes for Western. All of Western's owner/operators transport the homes with Western's motor carrier authority through the U.S. Department of Transportation (DOT), hereinafter referred to as DOT authority. Under the terms of the lease, and required by federal law, Western has exclusive possession, use, and control of the owner/operators' equipment. *Truth-in-Leasing Regulations*, 49 C.F.R. § 376.12(c)(1) (2012). Western pays the owner/operators a percentage of each haul.

Due to an inquiry from the Department, a tax auditor with the Department audited Western's records covering January 1, 2008, through December 31, 2010. The auditor issued Western a "Redetermination of Employer's Unemployment Insurance Tax Liability" and concluded that the remuneration received by Western's owner/operators during the audit period was wages for services performed in covered employment under Idaho's Employment Security Law. Consequently, the Department imposed an unemployment insurance tax liability of $13,277.93 on Western for the audit period.

Western timely appealed the Department's redetermination. An appeals examiner held a hearing and subsequently affirmed the Department's decision. Western then appealed to the Commission. After a de novo review of the record, the Commission affirmed the Department's decision. Western appeals the Commission's decision to this Court. We vacate and remand.

### III. STANDARD OF REVIEW

This Court exercises free review of the Commission's legal conclusions. *Giltner, Inc. v. Idaho Dep't of Commerce & Labor*, 145 Idaho 415, 418, 179 P.3d 1071, 1074 (2008).

### IV. ANALYSIS

"Idaho's Employment Security Law provides assistance for workers who face unemployment through no fault of their own." *Giltner*, 145 Idaho at 419, 179 P.3d at 1075 (citing I.C. § 72-1302). "Under the established system, 'covered employers' are required to contribute, by way of a tax on wages paid employees for services rendered in 'covered employment,' to the unemployment security fund." *John L. King, P.A. v. Dep't of Emp't*, 110 Idaho 312, 313, 715 P.2d 982, 983 (1986).

Covered employment is "an expansive term" that "sweeps within its purview employees and independent contractors alike." *Software Assocs., Inc. v. Dep't of Emp't*, 110 Idaho 315, 316, 715 P.2d 985, 986 (1986). "'Covered employment' means an individual's entire service

2

performed by him for wages or under any contract of hire, written or oral, express or implied, for a covered employer or covered employers." I.C. § 72-1316(1). "Wages" include "[a]ll remuneration for personal services from whatever source, including commissions and bonuses and the cash value of all remuneration in any medium other than cash." I.C. § 72-1328(1)(a). Unless the putative employer shows that an exemption applies, "[s]ervices performed by an individual for remuneration shall, for the purposes of the employment security law, be covered employment." I.C. § 72-1316(4); *Excell Constr., Inc. v. Dep't of Labor*, 141 Idaho 688, 694, 116 P.3d 18, 24 (2005).

The putative employer must satisfy a two-prong test in I.C. § 72-1316(4) "to merit an exemption from the presumption that services for remuneration are covered employment." *Giltner*, 145 Idaho at 419, 179 P.3d at 1075. Under I.C. § 72-1316(4), the putative employer must show: "(a) That the worker has been and will continue to be free from control or direction in the performance of his work, both under his contract of service and in fact; and (b) That the worker is engaged in an independently established trade, occupation, profession, or business." I.C. § 72-1316(4). The putative employer must demonstrate both prongs in I.C. § 72-1316(4) to overcome the presumption of covered employment. *Giltner*, 145 Idaho at 420, 179 P.3d at 1076. "[E]xemptions from coverage are narrowly construed." *John L. King, P.A.*, 110 Idaho at 313, 715 P.2d at 983.

This Court in *Giltner* issued a bright-line rule for the second prong in I.C. § 72-1316(4) specific to the interstate trucking industry. At issue in *Giltner* was whether the owner/operators used by a motor carrier to haul goods interstate were engaged in covered employment under Idaho's Employment Security Law. 145 Idaho at 418, 179 P.3d 1074. The Court in *Giltner* recognized that owner/operators were "solely dependent" on the motor carrier's "DOT authority to haul goods in interstate commerce" and then determined that "[t]herefore, as a matter of law, they could not be engaged in an independently established trade, occupation, profession or business." *Id.* at 420, 179 P.3d at 1076. Due to this new bright-line rule, the Court concluded that the owner/operators were engaged in covered employment because the motor carrier could not satisfy the second prong in I.C. § 72-1316(4). *Id.*

This rule from *Giltner*, which relied on the source of the owner/operator's DOT authority to determine whether the owner/operator was engaged in an independently established trade, occupation, profession or business, had wide application in the trucking industry. *Giltner*

3

categorically determined any motor carrier that used owner/operators to haul goods with the motor carrier's DOT authority would be unable to demonstrate that those owner/operators were engaged in an independently established trade, occupation, profession or business under the second prong in I.C. § 72-1316(4), unless the owner/operator had his own DOT authority. *Giltner*, 145 Idaho at 420 n.2, 179 P.3d at 1076 n.2; *Hernandez v. Triple Ell Transport, Inc.*, 145 Idaho 37, 175 P.3d 199 (2007). Unable to satisfy the second prong, a motor carrier with owner/operators hauling goods with the motor carrier's DOT authority was effectively precluded from demonstrating that the owner/operators were exempt from covered employment—even if other material facts pertaining to the second prong supported a contrary conclusion. In the present case the Commission strongly indicated the evidence supported the independence of the owner/operators, but it was bound by the per se rule of *Giltner* and therefore ruled the owner/operators were employees of Western as a matter of law.

"When there is controlling precedent on questions of Idaho law 'the rule of stare decisis dictates that we follow it, unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice.'" *Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 142 Idaho 589, 592, 130 P.3d 1127, 1130 (2006) (quoting *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 77, 803 P.2d 978, 983 (1990)). "While we are cognizant of the importance stare decisis plays in the judicial process, we are not hesitant to reverse ourselves when a doctrine, a defense, or a holding in a case has proven over time to be unjust or unwise." *State v. Maidwell*, 137 Idaho 424, 426, 50 P.3d 439, 441 (2002).

Employing the single factor of the source of the owner/operator's DOT authority has proven unjust, unwise, and incorrect because it fails to consider the nature of the owner/operator's business, which serves a distinct market in the interstate trucking industry. The business or service provided by an owner/operator is not the transportation of goods for manufacturers or shippers; rather, it is the transportation of goods for motor carriers—a point never raised by either party or discussed in the *Giltner* decision. Many owner/operators are solely dependent on the motor carrier's DOT authority, and this dependence is an intentional and fundamental part of the motor carrier-owner/operator relationship. The fact that an owner/operator may or may not have his own DOT authority is completely inconsequential and irrelevant for him to provide his services to a motor carrier, whereas it would be critical in

4

hauling for a manufacturer or shipper. In that case the owner/operator would use his own DOT authority. Moreover, federal law and regulations require that an owner/operator operates under the motor carrier's DOT authority, even if the owner/operator has his own DOT authority. 49 U.S.C. § 14102; 49 C.F.R. §§ 376.1–376.2, 376.11–376.12, 390.11. In other words, an owner/operator hauling goods for a motor carrier is prohibited by law from operating with his own DOT authority. In determining whether an owner/operator is engaged in an independently established trade, occupation, profession, or business, the focus has to be on the market served by the owner/operator. If the business served by the owner/operator is a manufacturer or shipper of goods, then the owner/operator must have his own DOT authority to operate in that market. That point was never raised or argued in the *Giltner* case. In serving the motor carrier market as a trucker, the owner/operator *must* use the motor carrier's DOT authority. That federal requirement is no more an indication of control or lack of independence than the other types of federal regulations discussed in *Giltner* where it was recognized that those federal requirements do not affect whether one is an independent owner/operator. *See Giltner*, 145 Idaho at 419–20, 179 P.3d at 1075–76.

This Court now recognizes that *Giltner*'s bright-line rule improperly focused on the source of the owner/operator's DOT authority as a single determinative factor, when in fact the source of an owner/operator's DOT authority has no effect on the owner/operator's service to the motor carrier market and neither the owner/operator nor the motor carrier has any control over the federal regulations governing DOT authority. *Giltner*'s determination that owner/operators "solely dependent" on a motor carrier's "DOT authority to haul goods in interstate commerce" cannot "as a matter of law . . . be engaged in an independently established trade, occupation, profession or business" was clearly incorrect and *Giltner*'s holding on that point is overruled. 145 Idaho at 420, 179 P.3d at 1076. The source of an owner/operator's DOT or other federal or state authority to haul goods interstate for a motor carrier is not a relevant factor for the analysis of the second prong in I.C. § 72-1316(4). No other part of the *Giltner* decision is overruled.

In this case the Commission determined that Western had demonstrated that its owner/operators were free from its control, thus meeting the first prong for the covered employment exemption in I.C. § 72-1316(4). This finding is not challenged on appeal. For the second prong, the Commission found that Western's owner/operators used Western's DOT authority to haul goods. Neither party challenges this factual finding. The Commission then

5

determined that Western failed to demonstrate that the owner/operators were engaged in an independently established trade, occupation, profession, or business under the second prong—despite that significant evidence suggested otherwise—because the Commission was bound by *Giltner*. With *Giltner* now overruled in part, this Court remands this case to the Commission for further proceedings consistent with this opinion. On remand, the Commission should determine whether Western satisfied the second prong of the covered employment exemption test in I.C. § 72-1316(4) without considering DOT authority as a factor.

The Department seeks an award of attorney fees pursuant to I.C. § 12-117. As the non-prevailing party, the Department is not entitled to an award of attorney fees. Western seeks an award of attorney fees and costs pursuant to Idaho Appellate Rule (I.A.R.) 41. Western has not cited any statutory provision authorizing such award. I.A.R. 41 does not provide the Court with the authority to award attorney fees. *Gilman v. Davis*, 138 Idaho 599, 603, 67 P.3d 78, 82 (2003). I.A.R. 41 simply "specifies the procedure for requesting an award of attorney fees on appeal." *Id.*

### V. CONCLUSION

The decision of the Commission is vacated and this case is remanded for further proceedings consistent with this opinion. We award Appellant costs, but not attorney fees, on appeal.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON, concur.

6